PEOPLE v FAUCETT

Docket No. 93765. Argued December 10, 1992 (Calendar No. 12). Decided May 11, 1993.

Merl J. Faucett was charged in the 88th District Court with possession with intent to deliver a controlled substance. The court, Theodore O. Johnson, J., suppressed the evidence and dismissed the case on the ground that an anonymous tip did not support the investigative stop that led to seizure of the contraband. The Alpena Circuit Court, Robert R. Ferguson, J., affirmed. The Court of Appeals, GRIFFIN, P.J., and HOOD and McDONALD, JJ., affirmed (Docket No. 131566). The people appeal, asserting that the tip, together with independent police corroboration, created a reasonable suspicion supporting an investigative stop in accord with the totality of the circumstances test enunciated in *Alabama v White,* 496 US 325 (1990).

In an opinion by Justice RILEY, joined by Chief Justice CAVANAGH, and Justices BRICKLEY, BOYLE, GRIFFIN, and MALLETT, the Supreme Court *held:*

Given the totality of the circumstances, the police officer had reasonable suspicion to make an investigative stop.

1. The Fourth Amendment protects citizens from unreasonable searches and seizures. Brief investigative stops short of arrest are permitted where police officers have a reasonable suspicion of ongoing criminal activity. Information from anonymous informants may supply reasonable suspicion where it carries sufficient indicia of reliability. The factors offered to establish these indicia of reliability, which include the informant's knowledge, veracity, and the degree of police corroboration, are to be considered in their totality rather than independently.

2. In this case the district court's characterization of the anonymous call is not supported by the record. The record indicated that the tipster identified the defendant, knew that at the time of the call that the defendant was en route, specified the route to be traveled, and described the defendant's pickup

REFERENCES

Am Jur 2d, Searches and Seizures §§ 78, 121.
See ALR Index under Informers; Search and Seizure.

truck with substantial accuracy. While none of these facts, standing alone, would support a finding of reasonable suspicion, it was error to disregard them in light of the totality of the circumstances analysis required by *White*. Applying the *White* analysis, there was reasonable suspicion of criminal activity sufficient to justify an investigative stop.

Reversed and remanded.

Justice LEVIN, dissenting, stated that, under *White*, to possess sufficient indicia of reliability to justify a stop, an anonymous tip must indicate that the caller has special familiarity with the defendant's affairs so as to predict future behavior. In this case, there was insufficient indicia of such reliability to justify the stop.

193 Mich App 499; 484 NW2d 670 (1992) reversed.

SEARCHES AND SEIZURES — INVESTIGATIVE STOPS — ANONYMOUS TIPS — TOTALITY OF CIRCUMSTANCES.

Whether an anonymous tip provides an indicia of reliability sufficient to support a reasonable suspicion of criminal activity and a subsequent investigative stop must be tested in the light of the totality of the circumstances (US Const, Am IV).

*Frank J. Kelley,* Attorney. General, *Thomas L. Casey,* Solicitor General, *Dennis P. Grenkowicz,* Prosecuting Attorney, *Robert A. Reuther,* Chief Assistant Prosecutor, and *Stuart R. Sergeant,* Assistant Prosecuting Attorney, for the people.

*Robert B. Kane* for the defendant.

RILEY, J. We are called upon to review the exclusion of evidence in proceedings for defendant's possession of approximately a quarter pound of marijuana. Specifically, the Court of Appeals affirmed the trial courts' conclusions that an anonymous telephone call relied upon by the Alpena Police Department to make an investigative stop of defendant's vehicle did not provide the basis to support a reasonable suspicion of criminal behavior. Resolution of this issue requires this Court to consider for the first time the effect of *Alabama v White,* 496 US 325; 110 S Ct 2412; 110

L Ed 2d 301 (1990), upon Michigan jurisprudence.[1] We conclude that given the totality of the circumstances, the police officer had reasonable suspicion to make an investigative stop. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

### I. FACTS

At approximately 6:30 P.M. on July 9, 1988, the Alpena police dispatcher received a telephone call from an anonymous source who stated that defendant was presently transporting a quarter pound of either marijuana or cocaine in a "newer model blue pickup, possibly a Datsun." The caller stated that defendant was en route to Alpena via Werth Road. The informant also stated that defendant would be turning onto Hobbs Drive, then possibly onto either Third or Grant. According to the tip, the drugs were concealed in a carrying case behind the front seat of the vehicle.

This information was relayed to Officer Michael Roy of the Alpena Police Department and to other law enforcement authorities including the state police. Minutes after receiving the information, Officer Roy observed a blue Mazda pickup truck traveling on Hobbs Drive. Officer Roy recognized defendant driver from a previous arrest and began

---

[1] Other state courts have adopted *White* to stand for the premise that anonymous tips, where corroborated by independent police investigation, may be sufficiently reliable to create a reasonable suspicion of criminality under the totality of the circumstances so that an investigative stop is warranted. See, e.g., *Beachwood v Smolency,* 74 Ohio App 3d 756; 600 NE2d 711 (1991) (an unidentified motorist's call to 911 from a cellular phone supported an investigative stop of an allegedly drunk driver where the information was accurate in several details and verified by independent police investigation); *Moreland v State,* 204 Ga App 218; 418 SE2d 788 (1992); *State v Adkins,* 829 SW2d 900 (Tex App, 1992); *State v Cash,* 595 So 2d 279 (Fla App, 1992); see also *State v Williams,* 251 NJ Super 617; 598 A2d 1258 (1991).

to follow him.[2] A LEIN search of the license plate revealed that defendant owned the blue pickup truck. When defendant turned onto Grant Street, Officer Roy pulled him over and explained that he had been stopped in connection with a drug investigation. Officer Roy conducted a weapons search of defendant and placed him in the back of his patrol car.

At about the same time, Michigan State Police Trooper Roger Liedke arrived at the scene. Having heard the same information that was relayed to Officer Roy, Trooper Liedke approached the pickup truck. Through the open passenger side window, Trooper Liedke detected the strong odor of fresh marijuana.[3] The subsequent search of the pickup truck uncovered a black attaché case containing eleven bags of marijuana behind the front seat.

The district court ordered suppression of the evidence on the ground that the anonymous tip did not support the investigative stop that led to seizure of the contraband. On appeal, the circuit court affirmed the district court's dismissal, as did

---

[2] At the preliminary examination, Officer Roy testified that the previous arrest concerned the filing of a false police report.

[3] In *People v Hilber,* 403 Mich 312; 269 NW2d 159 (1978), this Court held in a plurality opinion that the odor of burnt marijuana alone did not provide probable cause to search a vehicle. In *Hilber,* Justice LEVIN stated:

> [I]t is not reasonable to infer present use of marijuana, or to conduct a search for it, on the basis of past use of marijuana evidenced solely by a residual odor of marijuana in an automobile occupied by the defendant, absent determination with reasonable accuracy of the time frame of use in relation to defendant's occupancy. [*Id.* at 326.]

See, generally, Zupanec, anno: *Odor of narcotics as providing probable cause for warrantless search,* 5 ALR4th 681, §§ 3 and 4, pp 687-692. In the instant case, the odor of fresh marijuana was detected. Thus, the odor detected by Trooper Liedke could support a finding of probable cause to search defendant's vehicle. See, e.g., *United States v Gorthy,* 550 F2d 1051, 1052 and n 1 (CA 5, 1977); *State v Sandoval,* 92 NM 476; 590 P2d 175 (1979).

the Court of Appeals, which concluded that the facts failed to establish the existence of a " 'special familiarity with [defendant's] affairs' " to the extent that it was unreasonable for the police to conclude that the anonymous caller's information regarding the drugs was correct simply because the statements about defendant's travel route and the pickup truck were correct. 193 Mich App 499, 504; 484 NW2d 670 (1992). This Court granted the prosecutor's application for leave to appeal the issue whether the anonymous tip, together with independent police corroboration, created a "reasonable suspicion" supporting an investigative stop in accord with the totality of the circumstances test enunciated in *White*.[4]

## II. ANALYSIS

The exclusionary rule providing for suppression of unlawfully obtained evidence derives from protections contained in the United States Constitution.[5] US Const, Am IV ensures the following:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment, then, protects citizens from *unreasonable* searches and seizures. *Terry v*

[4] 440 Mich 893 (1992).

[5] The federal exclusionary rule was developed nearly eighty years ago in *Weeks v United States,* 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914). For a comprehensive discussion of the exclusionary rule in search and seizure cases, see, generally, Stewart, *The road to* Mapp v Ohio *and beyond: The origins, development and future of the exclusionary rule in search-and-seizure cases,* 83 Colum L R 1365 (1983).

*Ohio,* 392 US 1, 9; 88 S Ct 1868; 20 L Ed 2d 889
(1968); *United States v Brignoni-Ponce,* 422 US
873, 878; 95 S Ct 2574; 45 L Ed 2d 607 (1975);
*United States v Sharpe,* 470 US 675, 682; 105 S Ct
1568; 84 L Ed 2d 605 (1985); *People v Shabaz,* 424
Mich 42, 52; 378 NW2d 451 (1985). The reasonable-
ness of a Fourth Amendment seizure balances the
governmental interest that justifies the intrusion
against an individual's right to be free of arbitrary
police interference. *Terry, supra* at 20-21; *Brig-
noni-Ponce, supra.*

In addition, the federal constitutional protec-
tions against unreasonable searches and seizures
have been extended to state proceedings through
the Due Process Clause of the Fourteenth Amend-
ment. See *Mapp v Ohio,* 367 US 643, 655; 81 S Ct
1684; 6 L Ed 2d 1081 (1961); *People v Nash,* 418
Mich 196, 211; 341 NW2d 439 (1983) (opinion of
BRICKLEY, J.); *People v Burrell,* 417 Mich 439, 448,
n 15; 339 NW2d 403 (1983). Because the Michigan
Constitution does not provide more protection than
its federal counterpart, under the circumstances of
this case, federal law controls our inquiry. Thus,
consideration of defendant's motion for exclusion
of the marijuana necessarily implicates his federal
constitutional rights. See *People v Toohey,* 438
Mich 265, 270-271; 475 NW2d 16 (1991), and *Peo-
ple v Collins,* 438 Mich 8, 25-31; 475 NW2d 684
(1991).[6]

---

[6] Const 1963, art 1, § 11 provides:

The person, houses, papers and possessions of every person
shall be secure from unreasonable searches and seizures. No
warrant to search any place or to seize any person or things
shall issue without describing them, nor without probable
cause, supported by oath or affirmation. *The provisions of this
section shall not be construed to bar from evidence in any
criminal proceeding any narcotic drug . . . seized by a peace
officer outside the curtilage of any dwelling house in this state.*
[Emphasis added.]

## A. HISTORICAL OVERVIEW

The seminal federal case recognizing the validity of investigative stops is *Terry v Ohio, supra.* In *Terry,* a police officer stopped three men whom he suspected of " 'casing a job, a stick-up' " after observing two of the men repeatedly walk past and peer into a store window. 392 US 6. The officer stopped the men and asked for identification. Because adequate identification was not provided, the officer conducted a weapons search of the petitioner. The search uncovered a .38 caliber revolver in the left breast pocket of the petitioner's overcoat. Another weapon was found in the possession of one of the other men. In response to the defendants' motion to suppress the guns as the product of an illegal search and seizure, the Supreme Court recognized an intermediate form of weapons search for less than probable cause to arrest as long as the search was based upon specific and articulable facts together with any rational inferences drawn from those facts. *Terry, supra* at 20-21.

Over a decade later, the Supreme Court decided *Adams v Williams,* 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972), in which it concluded that the information provided by a *known* informant supported a reasonable suspicion of criminality that justified an investigative stop. In *Adams,* the informant told a police officer that an individual seated in a nearby vehicle possessed narcotics and carried a gun at his waist. On the basis of this information, the officer asked the individual to get out of his vehicle. Instead, the defendant rolled down his window. Although the gun was not visible, the

---

The emphasized language has been read to provide a degree of protection equivalent to the Fourth Amendment of the United States Constitution absent a "compelling reason" requiring the imposition of a different interpretation. See *Collins, supra* at 25 and n 26.

officer reached into the vehicle and found the weapon where the informant said it would be. The subsequent search incident to the arrest for suspected illegal possession of a weapon uncovered another gun, a machete, and a substantial quantity of heroin. The Court concluded that the tipster's information carried with it sufficient indicia of reliability to justify an investigative stop, distinguishing the case from the type requiring probable cause subject to the strictures of the *Aguilar* and *Spinelli* cases.[7] In reaching this conclusion, the majority stated:

> Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability. One simple rule will not cover every situation. Some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized. But in some situations . . . the subtleties of the hearsay rule should not thwart an appropriate police response. [407 US 147.]

In *United States v Cortez,* 449 US 411; 101 S Ct 690; 66 L Ed 2d 621 (1981), the Supreme Court was asked to assess the constitutionality of an investigative stop of a truck containing illegal aliens. The Court concluded that the observations of border patrol officers were sufficient to justify an investi-

---

[7] In *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969), the Supreme Court developed a two-pronged test for probable cause in *anonymous* informant cases. Briefly, the *Aguilar* and *Spinelli* cases required satisfaction of two independent elements before probable cause was established. The first prong required revelation of the informant's basis of knowledge, i.e., the particular means by which the knowledge was acquired. The second prong, known as the "veracity prong," required facts sufficient to establish the informant's veracity or reliability.

gative stop of a vehicle. The border patrol was suspicious of the smuggling of aliens into the United States along a particular portion of the Mexican border.[8] The border patrol suspected that the aliens, initially on foot, were met by a vehicle that could carry a large group without arousing suspicion. On surveillance, the border patrol saw only two vehicles that could carry a large group of people. The vehicle that returned from the east after having passed the officers earlier from the west was stopped and its driver was informed that he had been pulled over for an immigration check. When the driver consented to a search of the rear of the vehicle, the border patrol discovered six illegal aliens.

In assessing the validity of the investigative stop, the *Cortez* Court relied upon the totality of the circumstances test. Specifically, the Court concluded that an assessment of constitutionality must be based upon all of the circumstances. Furthermore, the assessment of all the circumstances must yield a particularized suspicion that the specific individual being stopped is engaged in wrongdoing. The Supreme Court also voiced the following caution:

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law

---

[8] Border patrolmen discovered sets of footprints in a sparsely populated area heading inland from the Mexico-Arizona border toward an isolated point on Highway 86. The border patrol believed that the smuggling occurred on clear nights and that the aliens were met by a vehicle between 2:00 A.M. and 6:00 A.M. and were transported east of the pickup point. Defendant's vehicle was observed heading west at 4:30 A.M. and returning eastward at 6:12 A.M. on the first clear night after the border patrol undertook surveillance of the area.

enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. [*Cortez, supra* at 418.]

Several years later, the Supreme Court rejected the two-pronged *Aguilar-Spinelli* test for probable cause to search or arrest on information provided by an anonymous tip. *Illinois v Gates,* 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). In reaffirming the use of the totality of the circumstances test for probable cause, the *Gates* majority noted that the two-pronged *Aguilar-Spinelli* test had "encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts . . . ." *Gates* at 234-235.[9] Although the informants' bases of knowledge and veracity are still highly relevant to the issue whether probable cause exists, the failure of one no longer requires the conclusion that probable cause does not exist. Rather, deficiencies in one may be compensated for by strengths of the other, or by other factors. See *id.* at 233-234.

In *United States v Sokolow,* 490 US 1; 109 S Ct 1581; 104 L Ed 2d 1 (1989), the Supreme Court reversed the United States Court of Appeals for the Ninth Circuit for its creation of unnecessary difficulty in dealing with the concepts concerning the reasonable suspicion analysis embodied in the Fourth Amendment.[10] *Id.* at 7. The ninth circuit

---

[9] See also *Brinegar v United States,* 338 US 160, 175; 69 S Ct 1302; 93 L Ed 1879 (1949) ("[i]n dealing with probable cause . . . we deal with probabilities [that] are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act").

[10] In *Sokolow,* Drug Enforcement Administration agents were informed by airline personnel that the defendant had purchased two

dichotomized the facts offered in support of a
reasonable suspicion into the following categories:
those that described actual, ongoing criminal activ-
ity and those that described "personal characteris-
tics" of drug couriers. The court of appeals re-
versed the defendant's conviction upon the basis of
its belief that a "reasonable suspicion" must be
supported by at least one factor of ongoing crimi-
nality. The *Sokolow* majority rejected the artificial
dichotomy and concluded that the facts and cir-
cumstances in their totality supported a finding of
reasonable suspicion to make the investigative
stop. *Id.* at 9.

With regard to the issue whether an anonymous
tip supports a reasonable suspicion to stop a sus-
pect, Michigan case law tracks federal precedent.[11]
In addition, the decisions of our courts regarding

round-trip airline tickets, having open return dates, to Miami for
$2,100 cash. Airline personnel also told the DEA that the purchaser
was about twenty-five years old, that he wore a jumpsuit and gold
jewelry, and that he appeared to be nervous. The DEA determined that
the defendant had given the airline agent what appeared to be a false
name. When the defendant returned three days later, DEA agents
stopped him just before he got into a cab and asked him for his
airline ticket and identification. The defendant claimed that he had
neither; he and his companion were escorted to the DEA office in the
airport where a trained dog detected narcotics in the defendant's
baggage.

[11] See *People v Tooks,* 403 Mich 568; 271 NW2d 503 (1978) (an
unidentified citizen's statement to police officers that a man was
showing two others a handgun nearby supported a reasonable suspi-
cion to make a *Terry* stop under the totality of the circumstances);
*People v Armendarez,* 188 Mich App 61; 468 NW2d 893 (1991) (a tip
of an anonymous phone caller stating that he was witnessing a drug
deal in a K mart parking lot helped to establish reasonable suspicion
of criminality upon consideration of (1) the reliability of the infor-
mant, (2) the nature of the information given, and (3) the reasonable-
ness of the suspicion in light of these other factors, together with
independent police corroboration); *People v Spencer,* 154 Mich App 6;
397 NW2d 525 (1986) (an informant's tip that the defendant bought,
sold, and transported stolen automobile parts had sufficient indicia of
reliability to support the reasonable suspicion necessary to stop the
defendant's vehicle). See also *People v Whalen,* 390 Mich 672, 682;
213 NW2d 116 (1973) (setting forth the reasonableness standard for
all automobile searches, including those based on informants' tips,
using the totality of the circumstances test).

the existence of probable cause on the basis of
informants' tips are also rooted in federal case
law.[12]

### B. *ALABAMA v WHITE*

On April 22, 1987, Corporal Davis of the Mont-
gomery Police Department received an anonymous
phone call informing him that Vanessa White
would be leaving apartment 235-C of the Lynwood
Terrace Apartments at a particular time later in
the day. The caller also described White's vehicle
as a brown Chrysler station wagon with a broken
right taillight lens. According to the caller, White
was going to Dobey's Motel with a brown attaché
case containing about an ounce of cocaine.

Corporal Davis staked out the apartment com-
plex, where he and his partner saw the vehicle
described by the anonymous informant. The offi-
cers also saw White enter the station wagon and
proceed toward Dobey's Motel. Davis radioed
ahead for a patrol unit to pull White over. White
was asked to step to the rear of the vehicle and
informed that she had been stopped for suspected
possession of narcotics. When asked if she would
permit a search of the vehicle, White consented.
White also gave the officers the combination to a
locked brown attaché case found in the vehicle.
The attaché case contained marijuana.

White was charged with possession of marijuana
and cocaine.[13] The Montgomery County Court de-
nied a motion to suppress the narcotics evidence.
On appeal, the Alabama Court of Criminal Ap-

[12] See, e.g., *People v Walker,* 401 Mich 572; 259 NW2d 1 (1977)
(applying the two-pronged test of *Aguilar-Spinelli* to determine
whether an anonymous tip, together with independent police corrobo-
ration, established probable cause to arrest).

[13] Three milligrams of cocaine were found in White's purse during
processing at the police station.

peals reversed on the ground that the officers did not have a reasonable suspicion to conduct an investigative stop. The Alabama Supreme Court denied the state's writ for certiorari. The United States Supreme Court granted the state's petition for certiorari[14] to reconcile the differing views of state and federal courts regarding the issue whether an anonymous tip could furnish reasonable suspicion for an investigative stop. *White, supra* at 332.

The Supreme Court began its analysis by recalling its decision in *Adams v Williams, supra.* In *Adams,* the majority concluded that the information provided by a *known* informant, though unverified, carried with it sufficient indicia of reliability to justify an investigative stop and weapons search. *White, supra* at 328. Next, the *White* majority revisited the *Gates* decision in which the Court rejected the *Aguilar-Spinelli* two-pronged test for the reliability of *anonymous* tips in favor of the totality of the circumstances test.[15] The *Adams* and *Gates* precedents formed the basis for the *White* Court's test for assessing whether an anonymous tip furnishes the reasonable suspicion necessary to make an investigative stop.[16]

The Court concluded that independent police corroboration of the informant's predictions "imparted some degree of reliability to the other

[14] 493 US 1042 (1990).

[15] The totality of the circumstances test was already in use in investigative stop cases not involving informants, see *Cortez, supra* at 417-418, and had been used previously in known informant cases assessing whether the information supported probable cause to search or arrest. See *Adams, supra; Draper v United States,* 358 US 307, 314; 79 S Ct 329; 3 L Ed 2d 327 (1959) (a known informant's detailed account of criminality, much of which was corroborated, supplied probable cause to arrest "under the facts and circumstances").

[16] In addition, the *White* majority noted that the reasonable suspicion standard is less demanding than the probable cause standard in terms of both the quantity and quality of information. *Id.* at 330.

allegations made by the caller." *Id.* at 332. More-
over, the caller's ability to predict White's future
behavior demonstrated a special familiarity with
White's affairs. *Id.* This "special familiarity" dis-
tinguished the caller's information from that ob-
servable by the general public, which in turn
supported a reasonable belief that the caller had
access to reliable information regarding White's
illegal activity. *Id.* In effect, the *White* majority
used the independent corroboration to satisfy the
veracity factor and the "special familiarity" to
satisfy the basis of knowledge factor.[17] Once these
factors were assessed under the totality of the
circumstances test, the majority concluded that
the Montgomery police had reasonable suspicion to
make an investigative stop that originated from
the anonymous phone call.

### C. FACTUAL COMPARISON OF *WHITE* AND *FAUCETT*

In *White,* an anonymous caller (1) identified
Vanessa White, (2) knew the apartment from
which she would be leaving, (3) specified the time,
(4) described the vehicle, and (5) told police White's
destination. For purposes of comparison, we bor-
row from the *White* opinion certain weaknesses
noted in their findings. First, the police on surveil-
lance observed White leave the apartment build-
ing but not apartment 235-C. Second, Corporal
Davis did not state the exact time that was given

---

[17] The basis of knowledge and veracity factors are remnants of the
*Aguilar-Spinelli* two-pronged test. *Gates* makes clear that the two
prongs are no longer independent factors of the reliability question.
*Id.* at 230. These two factors, however, are still highly relevant
considerations in the totality of the circumstances analysis. *Id.* Appar-
ently, the *Spinelli* opinion and Justice White's concurrence suggested
this method of establishing the veracity and basis of knowledge
prongs of the *Aguilar-Spinelli* test. See Grano, *Probable cause and
common sense: A reply to the critics of* Illinois v Gates, 17 U Mich J L
Ref 465, 467 (1984). See also *Gates, supra* at 230, n 6.

to him for the time of White's departure. Rather, the majority concluded that White departed within the time frame predicted by the caller. Third, the police stopped White before she reached Dobey's Motel. *Id.* at 327. Although White drove the most direct route toward the motel, the finding is nonetheless weakened because the premature stop prevented police from corroborating this aspect of the caller's information.[18]

In this case, we find the following facts to be critical: (1) the anonymous caller identified defendant, (2) the caller knew at the time of the call that defendant was en route, (3) the caller described the pickup truck with substantial accuracy, and (4) defendant's travel route was described in significant detail. Furthermore, Officer Roy of the Alpena Police Department corroborated defendant's identity through a LEIN search of the pickup truck's license plate, defendant's travel on Hobbs Drive as stated, and the predicted turn onto Grant Avenue before making the stop.

Although the caller's information lacked a point of departure as in *White,* we believe that this information lacked relevance because at the time

---

[18] The *White* caller also told police that the narcotics allegedly possessed by White were contained in a brown attaché case. Because police never saw the attaché case until after the stop and consensual search of the vehicle, it cannot properly be included in the "indicia of reliability" test in support of a reasonable suspicion. See *Williams,* n 1 *supra* at 619, n 2 ("[f]acts not known at the time of the seizure cannot be used to validate the actions of the police"); *Terry, supra* at 22. It is clear, however, that the *White* majority weighed a related fact in its decision that would militate against a finding of reasonable suspicion by noting that White was "carrying nothing in her hands" when she entered her vehicle. *White, supra* at 327. We also note that the caller incorrectly described the contents of the attaché case as cocaine rather than marijuana. This fact is also not appropriately considered in the decision whether the Montgomery police had a reasonable suspicion for the same reason. The relevant inquiry focuses upon the information known to the police officer at the time of the stop and whether it makes the related inference of criminality a reasonable one. See *Gates, supra* at 245, n 14 ("[the Supreme Court] ha[s] never required that informants used by the police be infallible").

the tipster called, defendant was already traveling toward Alpena. In addition, we do not believe that the caller's description of the pickup truck was fatally inaccurate. The caller described the vehicle as a "newer model blue pickup, possibly a Datsun." Though the pickup truck turned out to be a Mazda, the LEIN search ensured that Officer Roy was following the pickup truck described by the anonymous caller. Finally, the caller in this case described defendant's travel route in detail rather than the final destination. We compare this to *White* where the police stopped the defendant *before* they verified her predicted destination. Moreover, the tipster in *White* did not describe the travel route to be taken by White.

### III. SUMMARY

As noted earlier, the Fourth Amendment protects citizens from unreasonable searches and seizures. *Terry, Brignoni-Ponce, Sharpe, Shabaz, supra.* From *Terry,* we learn that brief investigative stops short of arrest are permitted where police officers have a reasonable suspicion of ongoing criminal activity. *Adams* teaches that information from known informants may supply reasonable suspicion where it carries sufficient indicia of reliability. The *Cortez* holding made clear that the totality of the circumstances test was to be used in investigative stop cases. Moreover, the *Cortez* Court warned against overly technical reviews of a police officer's common-sense assessment of the probabilities that criminal activity was afoot. In *Gates,* the Supreme Court rejected the inflexible requirement that an anonymous tipster's information satisfy both the basis of knowledge prong and the veracity prong of the *Aguilar-Spinelli* test in probable cause cases. Instead, these factors are to

be considered under the totality of the circumstances rather than independently. The *Sokolow* majority rejected the Ninth Circuit Court of Appeals artificial dichotomy of "personal characteristics" facts and "ongoing criminal activity" facts. Again, all facts are to be considered in their totality. Borrowing from its predecessors, the *White* Court held that a case involving an *anonymous* tipster must be tested under the *totality of the circumstances* with a view to the question whether the tip carries with it *sufficient indicia of reliability* to support a *reasonable suspicion* of criminal activity.

The district court concluded that the information provided by the anonymous informant was insufficient to create a reasonable suspicion,[19] stating:

> [T]here is no [police] corroboration except for the fact that the officer observed the Defendant Faucett in the general area . . . and that it was Merl Faucett and he was driving a blue late model pickup truck, although the wrong make.

Similarly, in its opinion, the circuit court stated

> that the anonymous tip did not contain the necessary range of details concerning the Defendant's present and future actions. Herein, *the anonymous information was limited to a vehicle description*

---

[19] We perceive a degree of confusion manifested in the preliminary transcript between the standard for an investigative stop, which requires a reasonable suspicion, and for a vehicle search conducted without a warrant, which requires probable cause. At one point, the district court narrowed what it perceived to be the sole issue to whether "an anonymous tip from an undisclosed source . . . is *sufficient probable cause* for the police officers *to make the stop* and the subsequent search." (Emphasis added.) However, the district court applied the reasonable suspicion standard to the investigative stop and concluded that suppression was appropriate on this basis alone. Having stated the proper standard in its order, we cannot say that the district court clearly erred on this basis. See *Burrell, supra* at 448.

*and the general direction it was traveling. This
limited information combined with the lack of
corroboration on the part of the police including
the fact that the make of the truck differed from
that contained within the anonymous tip,* did not
provide the reliability necessary to raise a reason-
able suspicion. [Emphasis added.]

The Court of Appeals agreed with the district
court and the circuit court that the anonymous
caller only predicted two facts, namely: "(1) that
the defendant was driving a blue pickup truck and
(2) that defendant's vehicle was traveling toward
town by way of Hobbs Drive and possibly Grant
Street." *Id.* at 504.

Although a trial court's ruling on a motion to
suppress evidence is entitled to deference and is
not to be disturbed unless it is clearly erroneous,
*Burrell, supra* at 448,[20] we find that the court's
characterization of the anonymous call is not sup-
ported by the record. We read the record as indi-
cating that the tipster identified defendant, knew
that at the time of the call defendant was on the
road, specified the route to be traveled, and de-
scribed the pickup truck with substantial accu-
racy. Clearly none of these facts, standing alone,
would support a finding of reasonable suspicion,
however, it was error to disregard them in light of
the totality of the circumstances analysis required
by *White.* See *Burrell, supra.* Furthermore, a sig-
nificant distinction between the facts in *White* and
in this case is the timing of the anonymous phone
call. In *White,* the Montgomery police had time to
establish a surveillance. In this case, the phone
call came after defendant had left with the narcot-

---

[20] See also *Cortez, supra* at 416 (citing with approval the ninth
circuit's use of the clearly erroneous standard for review of a federal
district court's ruling on a motion to suppress evidence for Fourth
Amendment reasons).

ics. Officer Roy corroborated all information possible, namely, defendant's identity, vehicle, and travel route, before stopping him. We are persuaded that this timing made the informant's failure to reveal defendant's point of departure irrelevant. Furthermore, we believe that the timing of the phone call heightened the exigency of the situation.[21] We conclude that it was error to disregard these facts in assessing whether a reasonable suspicion existed under the totality of the circumstances. See *Burrell, supra.*

Moreover, we take issue with certain characterizations of the facts made by all three courts. For example, the described travel route was more than a "general description" on the basis of the degree of its detail. In addition, the caller described the vehicle as a "newer model blue pickup, possibly a Datsun." We believe that this described the vehicle with sufficient certainty. That the pickup truck turned out to be a Mazda does not substantially affect the accuracy of the statement, particularly in light of the caller's qualification of the vehicle's manufacturer by use of the word "possibly." Furthermore, the circuit court's and the Court of Appeals apparent disregard of the police officer's identification of defendant and of the tipster's knowledge that defendant was en route runs afoul of the *Cortez* and *White* requirement that all facts must be considered in their totality. Even probable

---

[21] Searches of automobiles have been excepted from the general prohibition against searches without warrants as exigent circumstances. See, e.g., *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971); 68 Am Jur 2d, Searches and Seizures, § 45, p 698. In such cases, the automobile's mobility increases the risk of losing evidence if police officers must take the time to secure a warrant. Reasoning by analogy, we believe that there is a certain exigency in this case. Specifically, the timing of the phone call did not permit any time to establish surveillance of defendant, as was the case in *White.* We conclude that Officer Roy was permitted to take into account the possibility of losing defendant and any evidence in the pickup truck if he ended pursuit at the limits of his jurisdiction.

facts not directly indicating ongoing criminal activity have some probative significance that may amount to a reasonable suspicion when considered in their totality. *Sokolow, supra* at 9.

Despite certain factual weaknesses in the *White* case, such as the failure to verify White's destination, the Supreme Court, applying the totality of the circumstances test, held that the quantum of evidence supported a finding of reasonable suspicion on the basis of an anonymous tip made reliable by a degree of independent police corroboration. We are persuaded that application of the *White* analysis to the facts of this case supports the conclusion that there was a reasonable suspicion of criminal activity sufficient to justify an investigative stop.[22] The government's interest in the prevention of drug trafficking is a strong one. In contrast, a brief traffic stop on suspicion of a serious crime is not so intrusive as to persuade this Court that the stop was unreasonable. See *Terry* and *Brignoni-Ponce, supra.*

### IV. CONCLUSION

We conclude that the tipster's information carried with it sufficient indicia of reliability under the totality of the circumstances to support a finding that Officer Roy had a reasonable suspicion to make the investigative stop. Because the courts

---

[22] We agree with the dissent that the degree to which an anonymous tip predicts future behavior is an important factor in the analysis of cases involving the issues addressed today. We would add, however, that the totality of the circumstances standard is more flexible than the dissent would conclude. The factual situations that courts face in these matters vary to the extent that it would be unrealistic to require facts substantially similar to *White* before a court could hold that an anonymous tip contains the requisite indicia of reliability. See, e.g., *United States v Walker*, 805 F Supp 1112, 1117 (SD NY, 1992) (noting an inherent difference in types of crimes and the flexibility provided by the totality of the circumstances test for assessing the indicia of reliability of anonymous tips).

below resolved this controversy at the investigative stop stage, they did not address other important issues. Specifically, the act of placing defendant in the patrol vehicle may have been a de facto arrest that would require probable cause. Additionally, investigation of defendant's pickup truck by Trooper Liedke may have exceeded the scope of the stop. Thus, we decline to consider these questions until the parties have had an opportunity to be heard.

Reversed and remanded for further proceedings consistent with this opinion.

CAVANAGH, C.J., and BRICKLEY, BOYLE, GRIFFIN, and MALLETT, JJ., concurred with RILEY, J.

LEVIN, J. (*dissenting*). The majority concludes that an anonymous tip provided to the Alpena Police Department was sufficient to justify a stop and subsequent search of Merl Faucett's vehicle, and reverses the decision of the Court of Appeals. I would affirm.

I

The Alpena Police received an anonymous telephone call advising that Faucett was then transporting a quarter of a pound of either marijuana or cocaine in a "newer model blue pickup, possibly a Datsun," and that he was traveling into Alpena on Werth Road and would turn onto Hobbs Drive and then onto either Third or Grant. The tipster also advised that the drugs would be concealed in a carrying case behind the front seat of the vehicle.

The circuit court suppressed evidence of drugs found during a subsequent stop, finding that the anonymous tip did not justify a reasonable suspi-

cion of criminal activity sufficient to support an investigative stop of Faucett's vehicle because it "did not contain the necessary range of details concerning the Defendant's present and future actions." The Court of Appeals affirmed.

We all appear to agree concerning the law. The minimum constitutional standard that the police and the anonymous tip must meet is established under the federal constitution.[1] The recent decision of the United States Supreme Court in *Alabama v White,* 496 US 325; 110 S Ct 2412; 110 L Ed 2d 301 (1990), is controlling.[2]

The focus in *White* was whether the anonymous tip sufficiently *predicts future behavior* of the defendant, verified by the police, to justify the police in concluding that the tipster has special familiarity with the affairs of the defendant, and thus there is sufficient indicia of reliability of the tip to justify a stop.

In *White,* Corporal Davis of the Montgomery Police Department received an anonymous telephone call informing him that Vanessa White (1) would be leaving apartment 235-C of the Lynwood Terrace Apartments at a particular time

[1] Because the evidence of drugs was seized outside the curtilage of a dwelling house, the Michigan Constitution does not provide greater protection. Const 1963, art 1, § 11 provides:

The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug . . . seized by a peace officer outside the curtilage of any dwelling house in this state.

[2] I have considered this Court's decision in *People v Walker,* 401 Mich 572; 259 NW2d 1 (1977). *Alabama v White,* the United States Supreme Court's most recent explication of the principles established in *Illinois v Gates,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983), is controlling.

later that day, (2) would enter a brown Plymouth station wagon with a broken right taillight lens, (3) would drive to Dobey's Motel, and (4) would be in possession of an ounce of cocaine in a brown attaché case.[3]

Davis and his partner watched the Lynwood Terrace Apartments and observed a woman leave building 235 in the time frame designated by the caller, enter the brown station wagon, and proceed in the most direct route possible to Dobey's Motel. White was stopped by another squad car at Davis' direction before actually reaching the motel. Before stopping White, the Montgomery Police Officers had corroborated the following predictions made by the anonymous tipster: (1) a woman would leave building 235 of the Lynwood Terrace Apartments during a designated time frame, (2) she would enter a specifically described vehicle, and (3) would drive to a specific destination.

In deciding on the sufficiency of the tip in *White,* the Court emphasized the caller's ability to predict White's *future behavior.* As the Court observed (quoting its prior opinion in *Illinois v Gates,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 [1983]), "the anonymous [tip] contained a range of details relating *not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted*"[4] (emphasis added). The Court explained:

> The fact that the officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the

[3] The prohibited substance was found in the attaché case, but this was after the stop and search and did not provide retrospectively a basis for the stop.

[4] 496 US 332.

call. *What was important was the caller's ability
to predict respondent's future behavior, because it
demonstrated inside information—a special famil-
iarity with respondent's affairs.* The general public
would have had no way of knowing that respon-
dent would shortly leave the building, get in the
described car, and drive the most direct route to
Dobey's Motel.[5]

In finding the tip sufficient to support the inves-
tigative stop under the totality of the circum-
stances—and the Court said that *White* was a
"close case"[6]—the Court focused on the tipster's
prediction of White's future behavior that was
verified by the police, and concluded that there
was sufficient indicia of reliability to establish
reasonable suspicion justifying the stop of her
vehicle. It was the *verification of the prediction of
future behavior* that provided indicia of reliability
and the police in *White* with reasonable suspicion:

> Because only a small number of people are
> generally privy to an individual's itinerary, it is
> reasonable for police to believe that a person with
> access to such information is likely to also have
> access to reliable information about that individu-
> al's illegal activities. *When significant aspects of
> the caller's predictions were verified, there was
> reason to believe not only that the caller was
> honest but also that he was well informed,* at least
> well enough to justify the stop.[7]

## II

To provide sufficient indicia of reliability to
justify an investigative stop, the tip must indicate
that the caller has special familiarity with the

---

[5] *Id.* (Emphasis added.)

[6] *Id.*

[7] *Id.* (Citations omitted, emphasis added.)

defendant's affairs. Under *White,* such indicia arises from the tipster's ability to accurately predict the defendant's future behavior.

The anonymous tip in this case did not contain the same level of indicia of reliability, arising from the verification of prediction of future behavior, as did the tip in *White.*

The tip to the Alpena Police Department was made while Faucett was already driving into Alpena on Werth Road in his "newer model blue pickup, possibly a Datsun." Thus, the only prediction of future behavior contained in the tip that could possibly have been verified by the police was that Faucett would turn onto Hobbs Road, and then onto either Grant or Third. The only prediction actually verified by the police was that Faucett would turn from Hobbs—where he was first observed—onto either Grant or Third.

The majority relies on the following as critical to its conclusion that the anonymous tip to the Alpena Police was sufficient to justify the stop in this case: "(1) the anonymous caller identified defendant, (2) the caller knew at the time of the call that defendant was en route, (3) the caller described the pickup truck with substantial accuracy, and (4) defendant's travel route was described in significant detail."[8]

Evaluating the majority's four "critical facts," there was not sufficient indicia of reliability to justify a stop in this case. Although the officers verified that it was Faucett in the truck and that the truck appeared to have been traveling along Werth Road,[9] this part of the tip, the first three of the four "critical facts" relied on by the majority, did not provide indicia of reliability under the

[8] *Ante* at 167.

[9] Bearing in mind that Faucett was not observed until he was already on Hobbs Drive, albeit in the vicinity of the intersection of Hobbs Drive and Werth Road.

principles set forth in *White.*[10] The tipster's state-
ment that Faucett was traveling in his blue pickup
into Alpena on Werth Road did not indicate that
the caller had inside information, and is more
properly characterized as a condition existing at
the time of the tip, observable by any member of
the general public.[11]

This leaves what is left of the fourth "critical
fact," namely, that Faucett would turn from
Hobbs Drive onto either Third or Grant. And thus
the majority concludes that the Alpena police had
reasonable suspicion to make an investigative stop
of Faucett's truck simply because the police had
verified that Faucett would turn from Hobbs Drive
—where Faucett was first observed by the Alpena
Police—onto either Third or Grant.

Under the principles set forth in *White,* this was
not sufficient indicia of the reliability of the tip. I
would affirm the decision of the Court of Appeals.

[10] The majority stresses that the Alpena police verified all facts
available before stopping Faucett, and asserts that it was not relevant
that the caller did not provide a point of departure under the
circumstance that Faucett was already en route when the call was
made. This analysis obscures *White's* emphasis on the verification of
prediction of future behavior to establish reliability.

[11] Faucett was identified by name, and this might have some
relevance in determining whether the remainder of the tip was
credible. Anyone who knew Faucett but lacked "inside information"
or "special familiarity" with his affairs could, however, have so
identified him.