*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DANIEL TANORIS MADDOX,

Defendant-Appellant.

UNPUBLISHED
December 15, 2025
2:29 PM

No. 371604
Midland Circuit Court
LC No. 2023-009498-FH

Before: SWARTZLE, P.J., and O'BRIEN, and BAZZI, JJ.

PER CURIAM.

Defendant, Daniel Tanoris Maddox, appeals as of right his jury trial convictions for one count of delivery of a controlled substance (less than 50 grams), second or subsequent offense, MCL 333.7401(2)(a)(*iv*) and MCL 333.7413(1), one count of possession of a controlled substance, MCL 333.7403(2)(b)(*i*), and two counts of possession with intent to deliver a controlled substance (less than 50 grams), second or subsequent offense, MCL 333.7401(2)(a)(*iv*) and MCL 333.7413(1). Maddox was sentenced to 46 months' to 40 years' incarceration for each conviction, to be served concurrently. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from a controlled-substances transaction that occurred at a Shell gas station in Bay City, Michigan. On September 18, 2023, Detective Jacob DeFrancesco received a call from Patrol Officer Andrew Hawkins regarding a tip from a woman who wished to remain anonymous.[1] The tip provided "that there was a man named Q, goes by the nickname of the Q, staying at the Baymont Wyndham Hotel, driving a silver Nissan Rogue, and was selling narcotics, specifically

---

[1] The patrol officer testified that the tipster was a local woman whom he had recently come into contact with when he responded to a call for a drug overdose. The officer gave the woman his contact information in case she wanted to provide information in the future about narcotics trade in the city.

heroin and fentanyl, and a range of other narcotics.". The tipster claimed to have personal knowledge of Maddox, because he allegedly provided the narcotics resulting in her overdose.

Detective Sergeant Dave Stoppa reported to Detective DeFrancesco that he was following up on the tip by driving to the Baymont Wyndham Hotel, where he saw a silver Nissan Rogue leaving the parking lot. The vehicle appeared to be driven by a Black man who "somewhat" fit the description of Q reported by the tipster. At that point, Detective DeFrancesco left the premises to convene with Detective Sergeant Stoppa, who had started following the vehicle. Upon arriving at a nearby Shell gas station, Detective DeFrancesco saw a silver Nissan Rogue parked with one occupant inside, and "the person who fit the physical description of 'Q.' " After approximately 20 minutes, a white pickup truck arrived and parked next to the Nissan Rogue. A white man, later identified as Matthew Potter, got out of the pickup truck and reached his hand into Maddox's hand, in what appeared to be a hand-to-hand transaction that lasted "probably" around 10 seconds before returning to his vehicle.

Officers then conducted simultaneous traffic stops on both vehicles as they were attempting to exit the station, and Potter disclosed to the police that he purchased controlled substances from the driver of the silver Nissan Rogue. Maddox was then arrested and taken to jail. During the initial search of the Nissan Rogue, Detective Colton Eddy discovered a black digital scale in the center console with white residue on it, in addition to a black velvet bag under the steering wheel with "many different types of narcotics" inside, including fentanyl, varying forms of cocaine, and methamphetamine. Maddox maintained that the hand-to-hand transaction was not a narcotics transaction.

On January 31, 2024, Maddox moved to suppress the evidence recovered from his vehicle, asserting that anonymous tips cannot give rise to reasonable and articulable suspicion. Maddox, citing *People v Pagano*, 507 Mich 26; 967 NW2d 590 (2021), and *People v Soulliere*, 509 Mich 950; 972 NW2d 263 (2022), contended that there was no probable cause to search his vehicle because only the hand-to-hand transaction was observed, with no obviously visible narcotics activity. The prosecution did not file a response to Maddox's motion to suppress. At the subsequent motion hearing, defense counsel argued that "an observed exchange of money absent other factors indicating drug activity" did not amount to probable cause, and that because the police only saw Maddox engage in a hand-to-hand exchange, all evidence discovered in Maddox's vehicle must be suppressed. The prosecution responded that *Soulliere* was distinguishable from the present case due to the volume and specificity of the information obtained by the police that they were able to corroborate before the stop, including the descriptions of the vehicle model, potential suspect, the suspect's location, and the suspect's city of residence, in addition to observing the hand-to-hand transaction.

Following the parties' arguments, the trial court denied Maddox's motion to suppress, opining that there was an articulable and reasonable suspicion for the investigatory stop given the officers' observance of behavior indicative of a narcotics transaction, in conjunction with the tipster information which was corroborated by the officers, and the fact that the information that came from the tipster was based on personal knowledge due to her participation in a previous drug transaction with Maddox. The case proceeded to trial, and after a two-day jury trial, Maddox was convicted and sentenced as provided earlier. This appeal followed.

II. ANALYSIS

Maddox argues that the evidence recovered from his vehicle should have been suppressed because it was obtained pursuant to an unconstitutional search. We disagree.

"This Court reviews a trial court's ruling on a motion to suppress evidence for clear error; it reviews attendant questions of law de novo." *People v White*, 294 Mich App 622, 627; 823 NW2d 118 (2011), aff'd 493 Mich 187; 828 NW2d 329 (2013). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Abcumby-Blair*, 335 Mich App 210, 227-228; 966 NW2d 437 (2020).

The United States and Michigan Constitutions prohibit unreasonable searches and seizures by police officers. US Const Am IV; Const 1963, art 1, § 11. "The lawfulness of a search or seizure depends on its reasonableness." *People v Snider*, 239 Mich App 393, 406; 608 NW2d 502 (2000). "Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineated exceptions." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). The exceptions to the warrant requirement include: "(1) searches incident to a lawful arrest, (2) automobile searches, (3) plain view seizure, (4) consent, (5) stop and frisk, and (6) exigent circumstances." *Johnson v VanderKooi*, 509 Mich 524, 538; 983 NW2d 779 (2022), quoting *In re Forfeiture of $176,598*, 443 Mich 261, 266; 505 NW2d 201 (1993). "Each of these exceptions, however, still requires reasonableness and probable cause." *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011).

The automobile exception provides that a warrantless search of an automobile is reasonable if probable cause exists to believe it contains contraband. *People v Clark*, 220 Mich App 240, 242; 559 NW2d 78 (1996). "Probable cause exists where there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004), (quotation marks and citation omitted). "The benchmark for satisfaction of Fourth Amendment rights is reasonableness, and reasonableness requires a fact-specific inquiry that is measured by examining the totality of the circumstances." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "In order to effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *Id*.

In assessing the reliability of a tip, the Michigan Supreme Court has mandated that courts consider, under the totality of the circumstances, "(1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors." *People v Tooks*, 403 Mich 568, 577; 271 NW2d 503 (1978). Informants may provide reasonable suspicion when their tips carry a sufficient indicium of reliability. *People v Faucett*, 442 Mich 153, 168; 499 NW2d 764 (1993).

The first pertinent inquiry is whether the police had reasonable suspicion to conduct an investigatory stop of Maddox. Maddox contends that the officers lacked reasonable suspicion to stop and search his vehicle at the gas station. "Police officers may make a valid investigatory stop if they possess 'reasonable suspicion' that crime is afoot." *Champion*, 452 Mich at 98. "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Id*.

Maddox argues that the tip was not properly corroborated by the police because the tipster never specifically mentioned that narcotics were in his vehicle, and thus could not have formed reasonable suspicion for the contested stop. However, there was a plethora of evidence that supported the finding of reasonable suspicion to conduct an investigatory stop. The officers were able to corroborate the information provided by the tipster, as they saw a person and vehicle that matched the tipster's description at the hotel that the tipster directed them to. Additionally, upon running the plates on the vehicle, the officers were able to confirm that the vehicle was registered in Bay City, the city the tipster identified as the suspect's city of origin. The officers followed Maddox to the gas station, where they saw him engage in what they believed to be a hand-to-hand exchange, which based on their training and experience, led the police to believe they observed a drug transaction; thus, providing ample evidence to support a stop based on reasonable suspicion. This is considerably more evidence and corroboration than existed in *Soulliere*, 509 Mich at 951 (holding that the officers lacked reasonable suspicion when their only observation was that money changed hands in an area known for drug activity).

Maddox also argues that the police did not properly corroborate the information in the tip. In *Pagano*, 507 Mich at 26, 33, the police received a 911 call reporting that the defendant was yelling and being belligerent towards children, which led officers to believe the defendant was intoxicated--the defendant then got into a car and drove away. Officers located the defendant's vehicle, observed no traffic offenses, and stopped the vehicle under suspicion of operating while intoxicated. *Id*. Our Supreme Court ruled that the police lacked reasonable suspicion to do so. *Id*. In the present case, the police corroborated information from a tip received from a known individual, that described the suspect's physical appearance, location, vehicle, and in the midst of conducting an undercover observation of the person they saw him participate in a suspected drug transaction, establishing reasonable suspicion and distinguishing this case from both *Soulliere* and *Pagano*.

The second relevant inquiry is whether the totality of the circumstances established probable cause to conduct a warrantless search of Maddox's vehicle. Not only did the officers witness what they believed to be a hand-to-hand transaction between Maddox and Potter, but Potter also told the officer's when stopped, that he had just purchased narcotics from Maddox providing ample probable cause. See *People v Sizemore*, 132 Mich App 782, 787-788; 348 NW2d 28 (1984) (providing that probable cause can be formed during a stop when police obtain further information regarding a suspected offense); see also *Wayne County Prosecutor v Recorder's Court Judge*, 101 Mich App 772, 776-777; 300 NW2d 516 (1980) (probable cause for a search and seizure can be formed by an officer's observation of an exchange that in their training and experience is consistent with a narcotics transaction, and is stronger when combined with information linking a defendant to prior narcotics involvement). Accordingly, the police executed a valid stop via reasonable suspicion, and a valid search under the automobile exception, rendering suppression of the contested evidence unnecessary. The trial court did not clearly err in denying Maddox's motion to suppress on this constitutional basis.

Affirmed.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi

-4-