*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

MARK OWEN ANDERSON,

Defendant-Appellee.

FOR PUBLICATION
February 25, 2026
1:24 PM

No. 375876
Tuscola Circuit Court
LC No. 24-016610-FH

Before: CAMERON, P.J., and M. J. KELLY and YOUNG, JJ.

YOUNG, J.

While working at an event at the Tuscola County Fairgrounds, Shawna Brinkman called 911 to report that two men were about to depart the fairgrounds on motorcycles and were intoxicated. A Michigan State trooper was dispatched and stopped defendant, Mark Owen Anderson, based only on Brinkman's tip, without observing any traffic violation. Anderson was, as Brinkman surmised, driving while intoxicated. Anderson was charged with operating a vehicle while intoxicated, third offense, MCL 257.625(7)(a)(*ii*). He successfully moved in the circuit court to suppress evidence seized as a result of the traffic stop. Although the circuit court erred when it used Brinkman's preliminary examination testimony to assess the reliability of her tip, we affirm.

## I. BACKGROUND

Anderson and another man were attending a dirt bike rally at Tuscola County Fairgrounds. Shawna Brinkman was working the entry gate at the venue and noticed the two men drinking beers. Afterward, as the men left on their motorcycles, Brinkman called 911. She told the operator that the men were on black Harley Davidson motorcycles, that they "[were] getting ready to leave [and] that [they were] intoxicated." She went on, "I've watched them drink at least six beers and they've been asked multiple times to not drink on [the] fairgrounds." Brinkman also provided physical descriptions of both men, the license plates of their motorcycles and direction of travel and reiterated that the men "[were] drunk."

Trooper Chloe Farnham was near the rally and received a call from dispatch that relayed the information from Brinkman's call.[1]  Farnham identified the two men by the physical description and the license plate numbers Brinkman provided.  She followed the motorcycles for five minutes and while neither motorcyclist committed a traffic violation, Farnham stopped Anderson.[2]  Field sobriety tests indicated Anderson was intoxicated.

After being bound over on a charge of operating a vehicle while intoxicated third-offense, Anderson moved the circuit court to suppress the evidence from the traffic stop and dismiss the charge on the grounds that the traffic stop was unconstitutional.  Anderson argued that the caller was unreliable, and that Farnham lacked reasonable suspicion to stop him.  The circuit court agreed, finding that Brinkman's preliminary examination testimony completely undermined the content of her 911 call, and granted Anderson's motion.  This appeal followed.

## II.  ANALYSIS

The prosecution argues that Brinkman's 911 call established both that she was reliable as well as reasonable suspicion for Farnham to stop Anderson.  We agree with the prosecution only as to reliability.

## A.  RELIABILITY OF THE TIP

"A traffic stop does not violate the Fourth Amendment when a police officer has an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Moorman*, 331 Mich App 481, 485; 952 NW2d 597 (2020).  A tip provided to police may establish a reasonable suspicion of criminal activity if it carries with it "sufficient indicia of reliability." *People v Faucett*, 442 Mich 153, 169; 499 NW2d 764 (1993). Contrary to some of the statements by the lower court, this does not require a "history of reliability" or status as a professional informant.  Here, the circumstances indicate that Brinkman was reliable,

---

[1] At the preliminary examination hearing in this case, Farnham confirmed that the call she received from dispatch included substantially the same information as Brinkman provided to the operator. While we did receive a recording of the 911 phone call, we did not receive a recording of the call from dispatch to Farnham.  Because neither party argues about whether the information *from the dispatcher* amounts to reasonable suspicion and because Farnham's testimony confirms the content was substantially the same, our analysis focuses on the 911 call.  We note, however, that other cases engage with the content of the dispatch call, rather than the 911 tip.  See e.g. *Navarette v California*, 572 US 393, 395; 134 S Ct 1683; 188 L Ed 2d 680 (2014) (directly quoting a 911 tip as relayed by the dispatcher); see also *State v Stanage*, 893 NW2d 522; 2017 SD 12 (2017) (reversing the denial of a motion to suppress where a fast food employee provided a tip to police of suspected drunk driving because an individual in the drive-through had bloodshot eyes and slurred speech but only the conclusion of drunk driving was relayed by dispatch, not the supporting personal observations of the employee).

[2] The other motorcyclist continued driving and Farnham did not pursue him.

and the circuit court clearly erred in finding otherwise. *People v Jenkins*, 472 Mich 26, 31; 691 NW2d 759 (2005).

To begin, we agree with the circuit court's observation that Brinkman's testimony at the preliminary examination contradicted her statements made in the 911 call, but we disagree that those contradictions make Brinkman legally unreliable for the purposes of this Fourth Amendment analysis. "A valid investigatory stop must be justified *at its inception*." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849, 853 (1996) (emphasis added). Thus, when assessing the reliability of a tip, the focus is exclusively on the information provided to dispatch and ultimately relayed to the trooper.

When Brinkman made the initial report in this case, she called 911 and gave her name and phone number. This is at least partially indicative of reliability. *Navarette*, 572 US at 400-401. Brinkman told the operator that she watched Anderson and his companion drink "at least six beers," that the two men were asked "multiple times" not to drink on the fairground, that they were about to leave on motorcycles, and that they may have had beers in their cooler on the motorcycles. Because Brinkman claimed eyewitness knowledge of an alleged crime, and because she called 911 close in time to her observations, her tip is entitled to further weight. *Id*. at 399. Brinkman additionally provided physical descriptions of the two men and their motorcycles and told the operator the direction the men were heading. When Farnham spotted the two men, they and their motorcycles matched the information she received from dispatch. The men were also traveling in the direction stated in Brinkman's call and the corroborated information indicates Brinkman's reliability as a tipster. *Id*. at 398 ("the officers' corroboration of certain details made the anonymous tip sufficiently reliable . . . ."). Thus, at the time the call was placed, Brinkman was reliable.

B. REASONABLE SUSPICION

After finding that Brinkman was reliable, the circuit court must next determine whether the information Brinkman provided established reasonable suspicion for Farnham to stop Anderson. Reasonable suspicion requires less of a showing than probable cause, but "it still entails something more than an inchoate or unparticularized suspicion or 'hunch,' because an officer must have had a particularized and objective basis for the suspicion of criminal activity." *People v Pagano*, 507 Mich 26, 32; 967 NW2d 500 (2021) (quotation marks and citation omitted).

Reasonable suspicion need not be supplied by the officer's own observations; it can be supplied by another person's observations. *Navarette*, 572 US at 397. "In determining whether the information from the citizen-informant carried enough indicia of reliability to provide the officers with a reasonable suspicion," courts are to consider the totality of the circumstances, including "(1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors." *People v Tooks*, 403 Mich 568, 575; 271 NW2d 503 (1978). Contrary to the trial court's conclusion, there is no legal requirement that an officer corroborate the information in the tip. However, when an officer does corroborate some information, it affects the reliability analysis, as indicated above. And it follows that, "an informant who is proved to tell the truth about some things is more likely to tell the truth about other things, including the claim that the object of the tip is engaged in

criminal activity." *Navarette*, 572 US at 398 (cleaned up). However, even a reliable tipster must supply more than "a conclusory allegation of drunk or reckless driving." *Navarette* at 401-402.

At oral argument appellate defense counsel conceded that the content of the 911 call provided reasonable suspicion to make a traffic stop. Their brief in this Court, however, argued something different: that Brinkman's 911 call "is little more than a conclusory allegation of drunk driving." It is with the latter argument that we agree.

In her 911 call, Brinkman relayed the following information:

> There's two gentlemen on Harleys getting ready to leave that are intoxicated. I watched them drink at least six beers and they've been asked multiple times not to drink on the fairgrounds.

Brinkman then provided the presumed direction of travel and concluded with "they are drunk."

Brinkman's call does include conclusory allegations of drunk driving. Brinkman states the two men "are intoxicated" and "are drunk." But, critically distinct from *Pagano*, Brinkman's call also contains additional specific observations by Brinkman: that the two men were repeatedly asked to stop drinking at the fairground and that she saw the two men consume six beers. This factual scenario does not have an exact analogue in our jurisprudence so we begin with what that information is not.

The observations relayed in Brinkman's 911 call are not "certain driving behaviors [that are] sound indicia of drunk driving." *Navarette*, 572 US at 402-403 (cleaned up) (noting the "paradigmatic manifestations of drunk driving" include "weaving all over the roadway," "cross[ing] over the center line on a highway and almost caus[ing] several head-on collisions," "driving all over the road," "weaving back and forth," and "driving in the median."); see also *People v Dacus*, 559 P3d 198, 205; 2024 CO 51 (Colo, 2024) (holding that a caller provided the police with reasonable suspicion to stop a vehicle where the caller provided contemporaneous observations of the individual "driving erratically and crossing lanes of traffic.").

The observations relayed in Brinkman's 911 call are not physical indicators of drunkenness (i.e. observations of bloodshot, watery eyes and slurred speech after an admission that alcohol was consumed). See *People v Anderson*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 369614), slip op at 4-5; see also *State v Scholl*, 684 NW2d 82, 2004 SD 85 (2004) (finding an officer had reasonable suspicion to make a traffic stop based only on a tip where the tip provided a personal observation that the driver had left a bar "stumbling pretty badly and ha[d] problems getting into [his] Toyota Tacoma pickup."). As recognized by the trial court, drinking alcohol and then driving a vehicle is not a crime in and of itself; thus, observing two men consume beer, without more, is not an observation of criminal behavior or behavior by which one can infer criminality. Brinkman also said, "they've been asked multiple times not to drink on fairgrounds," but that does not support "a commonsense judgment" that the individuals were drinking to the point of intoxication. *Anderson*, ___ Mich App at ___; slip op at 3 (citing *Pagano*, 507 Mich at 32).

Critically absent from Brinkman's tip is any information that suggests Anderson was engaging in crime, beyond Brinkman's own conclusions. Moreover, after five minutes of following Anderson and observing his operation of his motorcycle, the trooper observed nothing

to corroborate Brinkman's otherwise conclusory statements. The dissent notes other states that have held a layperson's conclusory statement on another's intoxication can rise to the level of reasonable suspicion. The United States Supreme Court has not, and Michigan has not, and we decline to do so today agreeing that "[d]runken driving is a serious matter, but so is the loss of our freedom to come and go as we please without police interference." *Navarette*, 572 US at 414 (SCALIA, J., dissenting).

Because Brinkman's tip failed to communicate sufficient information suggesting Anderson was operating a vehicle while intoxicated, the trooper had no reasonable suspicion that a crime was afoot.

Accordingly, we affirm the trial court's order granting Anderson's motion to suppress.[3]

/s/ Adrienne N. Young
/s/ Michael J. Kelly

---

[3] See *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 697; 588 NW2d 715 (1998) (this Court may affirm a trial court's decision if the trial court reached the correct outcome, albeit for a different reason).