PEOPLE v BARBARICH

Docket No. 290772. Submitted September 13, 2010, at Detroit. Decided February 1, 2011, at 9:15 a.m.

Shaun D. Barbarich was charged with operating a motor vehicle while intoxicated, MCL 257.625, after the driver behind him in traffic made eye contact with a police officer in the next lane, pointed to defendant's car, and mouthed the words "almost hit me" through her closed window. On this basis, the officer stopped defendant's vehicle and discovered that defendant was intoxicated. Defendant moved to suppress the evidence of his intoxication and dismiss the charge on the ground that the informant's tip had not provided the officer with the reasonable suspicion required to stop defendant's vehicle under the protections against unreasonable searches and seizures guaranteed by the Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11. The 28th District Court, James A. Kandrevas, J., denied the motion and, on defendant's appeal, the Wayne Circuit Court, James A. Callahan, J., reversed and dismissed the charge. The Court of Appeals denied the prosecution's application for leave to appeal. The prosecution applied for leave to appeal in the Supreme Court, which, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for consideration as on leave granted. 485 Mich 1059 (2010).

The Court of Appeals *held*:

Under the totality of the circumstances, the unnamed informant's contemporaneous face-to-face tip to a police officer about defendant's erratic driving provided the reasonable suspicion necessary to justify the investigative stop of defendant's moving vehicle. Because the public's interest in safety of the roadways is high compared to the minimally invasive nature of the investigation, fewer foundational facts are necessary to justify an investigative stop of a moving vehicle than a stop and frisk for a concealed weapon or contraband. While the quantity of information in a citizen's tip about erratic driving must be sufficient to identify the vehicle and to support an inference of a traffic violation, a tip is sufficiently reliable if law enforcement corroborates its innocent details. The circuit court erred by dismissing the charge.

Reversed and remanded for further proceedings.

GLEICHER, J., dissenting, would have held that a warrantless stop based on an uncorroborated tip from an unidentifiable source that lacks detail and suggests only an ordinary traffic infraction violates the Fourth Amendment.

SEARCHES AND SEIZURES — AUTOMOBILES — INVESTIGATIVE STOPS — REASONABLE SUSPICION — INFORMANTS.

An unnamed informant's contemporaneous face-to-face tip to the police about erratic driving may be sufficient to justify an investigative stop of the driver's moving vehicle under the totality of the circumstances; the tip must identify the vehicle, support an inference of a traffic violation, and be corroborated in its innocent details by the police (US Const, Am IV; Const 1963, art 1, § 11).

*Bill Schuette,* Attorney General, *B. Eric Restuccia,* Solicitor General, *Kym L. Worthy,* Prosecuting Attorney, and *Lori Baughman Palmer,* Assistant Prosecuting Attorney, for the people.

*Boulahanis & Associates, P.C.* (by *Gregory J. Boulahanis*), for defendant.

Before: GLEICHER, P.J., and ZAHRA and K. F. KELLY, JJ.

K. F. KELLY, J. This prosecutor's appeal requires us to decide what amount of information supplied by an unnamed citizen, who provides a face-to-face contemporaneous tip about potentially dangerous or erratic driving, is sufficient to justify an investigative stop of a moving vehicle. On defendant's motion to suppress evidence, the circuit court dismissed defendant's charge of operating a motor vehicle while intoxicated, MCL 257.625, on the ground that the police officer lacked a reasonable articulable suspicion that defendant was involved in criminal activity. We disagree and reverse.

I. BASIC FACTS

On March 17, 2008, defendant was issued a citation

for driving while intoxicated. Defendant moved to suppress the evidence of his intoxication and dismiss the charge on the basis that the stop of his vehicle was unreasonable and unconstitutional.

The district court held an evidentiary hearing on July 11, 2008. The only witness to testify was Michigan State Trooper Christopher Bommarito, who had stopped defendant's vehicle and issued defendant the citation. Bommarito testified that on the evening of March 17, 2008, which was Saint Patrick's Day, he was on regular patrol, driving a fully marked police car. As part of his assignment that evening, he was conducting a property inspection at a bar called Malarkey's. Bommarito indicated that the bar's parking lot was full of patrons, a "big party tent" was set up in the parking lot, and he was there to look for problems, such as people urinating outside. After his inspection, Bommarito left the Malarkey's parking lot and headed south on Dix Road. Immediately after leaving the parking lot, a red pickup truck passed Bommarito's vehicle, heading northbound on Dix Road. Another vehicle, defendant's, was traveling in front of the red pickup. As Bommarito passed the red pickup, the driver of that vehicle made eye contact with Bommarito, pointed directly to defendant's vehicle in front of her, and mouthed the words "almost hit me." Bommarito immediately made a U-turn, turned on his emergency lights and siren, and followed defendant's vehicle into the Malarkey's parking lot. Bommarito approached defendant's vehicle and discovered that defendant was intoxicated. During the evidentiary hearing, Bommarito admitted that he had made no attempt to speak to the woman in the red pickup before stopping defendant and that he had not personally observed defendant driving in a manner that would have justified a stop. In other words, Bommarito stopped defendant's vehicle solely on the basis of the

woman's action of pointing to defendant's vehicle and mouthing the words "almost hit me."

The district court denied without explanation defendant's motion to suppress. Before the matter could proceed to trial, defendant appealed the district court's decision in the circuit court, arguing that Bommarito lacked a reasonable suspicion to stop his vehicle. The circuit court reversed on the basis that Bommarito had no reasonable, articulable suspicion that a crime was afoot, but merely had a hunch, and therefore the stop violated defendant's Fourth Amendment rights. It dismissed the charge against defendant.

Plaintiff then filed for leave to appeal in this Court. Initially, this Court denied leave to appeal, *People v Barbarich*, unpublished order of the Court of Appeals, entered June 3, 2009 (Docket No. 290772), and the matter was appealed in our Supreme Court. In lieu of granting leave to appeal, the Court remanded the case to this Court "for consideration as on leave granted." *People v Barbarich*, 485 Mich 1059 (2010). We now consider whether the circuit court erred by granting defendant's motion to suppress.

## II. STANDARD OF REVIEW

We review de novo the circuit court's ultimate ruling on a motion to suppress evidence. *People v Davis*, 250 Mich App 357, 362; 649 NW2d 94 (2002). However, we review its factual findings for clear error. *Id*. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Mullen*, 282 Mich App 14, 22; 762 NW2d 170 (2008) (citation and quotation marks omitted). "We overstep our review function if we substitute our judgment for that of the trial court and make independent findings."

*People v Bolduc*, 263 Mich App 430, 436; 688 NW2d 316 (2004) (citation and quotation marks omitted).

### III. GENERALLY APPLICABLE LAW

The Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution protect against *unreasonable* searches and seizures.[1] Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). This does not mean that all searches and seizures conducted without a warrant are forbidden; only those that are unreasonable. The United States Supreme Court has carved out numerous exceptions to the general rule that warrantless searches are unreasonable using a test that "balances the governmental interest that justifies the intrusion against an individual's right to be free of arbitrary police interference." *People v Faucett*, 442 Mich 153, 158; 499 NW2d 764 (1993). Thus, the higher the governmental interest, the more likely a warrantless search or seizure is to be reasonable, especially if the implicated individual interest is low.

As subjective as this test may be, several categories of permissible warrantless searches and seizures are well established in Fourth Amendment jurisprudence, including "exigent circumstance, searches incident to a lawful arrest, stop and frisk, consent, and plain view."

---

[1] The Michigan Constitution is construed to provide the same protection as that provided by the Fourth Amendment absent a compelling reason to do otherwise. *People v Levine*, 461 Mich 172, 178; 600 NW2d 622 (1999). And "[w]ith regard to the issue whether an anonymous tip supports a reasonable suspicion to stop a suspect, Michigan case law tracks federal precedent." *People v Faucett*, 442 Mich 153, 163; 499 NW2d 764 (1993).

*People v Brzezinski*, 243 Mich App 431, 433; 622 NW2d 528 (2000), citing *In re Forfeiture of $176,598*, 443 Mich 261, 265; 505 NW2d 201 (1993), and *People v Jordan*, 187 Mich App 582, 586; 468 NW2d 294 (1991). Each of these exceptions, however, still requires reasonableness and probable cause. *Brzezinski*, 243 Mich App at 433 While each of these categories of searches and seizures has been deemed reasonable after a balancing of the relevant interests, the ultimate determination whether a particular search is reasonable is fact-intensive and must be measured by examining the total circumstances of each case. See *Mullen*, 282 Mich App at 21. Generally, if evidence is seized in violation of the constitutional prohibition against unreasonable searches and seizures, it must be excluded from trial. *People v Chowdhury*, 285 Mich App 509, 516; 775 NW2d 845 (2009).

The only exception applicable in the present case is the investigative stop, also known as a *Terry* stop. *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). Under this doctrine, if a police officer has a reasonable, articulable suspicion to believe a person has committed or is committing a crime given the totality of the circumstances, the officer may briefly stop that person for further investigation. *People v Christie (On Remand)*, 206 Mich App 304, 308; 520 NW2d 647 (1994), citing *Terry*. Moreover, under *Terry*, a police officer may approach and temporarily detain a person for the purpose of investigating possible criminal behavior even if probable cause does not exist to arrest the person. *Terry*, 392 US at 22; *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). The scope of any search or seizure must be limited to that which is necessary to quickly confirm or dispel the officer's suspicion. *People v Yeoman*, 218 Mich App 406, 411; 554 NW2d 577 (1996).

When a court is called upon to determine whether a defendant's Fourth Amendment rights have been violated in the context of a *Terry* stop, it should view the totality of the circumstances in light of commonsense judgments and inferences about human behavior, *People v Horton*, 283 Mich App 105, 109; 767 NW2d 672 (2009), and should be careful not to apply overly technical reviews of a police officer's assessment of whether criminal activity is afoot, *Faucett*, 442 Mich at 168. Further, when the circumstances involve an informant's tip, courts must examine whether the tipster's information contained sufficient indicia of reliability to provide law enforcement with a reasonable suspicion that would justify the stop. *Faucett*, 442 Mich at 168. To assess the reliability of a tip, the Michigan Supreme Court has mandated that courts consider, given the totality of the circumstances, "(1) the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors." *People v Tooks*, 403 Mich 568, 577; 271 NW2d 503 (1978).

### A. FEDERAL JURISPRUDENCE: *UNITED STATES v WHEAT*

No precedentially binding Michigan case has addressed the exact factual situation before this Court, i.e., an investigative stop of a moving automobile based solely on a citizen informant's face-to-face tip about driving that potentially poses a danger to persons or property. However, the United States Court of Appeals for the Eight Circuit has considered a factual situation similar to the one at issue. In *United States v Wheat*, 278 F3d 722, 724 (CA 8, 2001), a citizen driving on the highway called 911 and reported that a tan Nissan with a license plate beginning with W-O-C was being driven erratically in the northbound lane of the highway.

Officers stopped the vehicle shortly thereafter, without having first observed any erratic driving. *Id.* at 724-725.

After extensively reviewing caselaw on the matter, the court determined that the amount of information necessary to justify an investigative stop based on an anonymous tipster's report of erratic driving is less than that required for other types of criminal activity that pose less immediate danger. *Id.* at 729-730, 733-734. The court indicated that a tip can provide reasonable suspicion for a stop if "the anonymous tipster . . . provide[s] a sufficient quantity of information" and that the quality, or reliability, of the information conveyed need only be corroborated in its innocent details. *Id.* at 731, 735. With regard to the former, the quantity of information must include sufficient detail to ensure that the car identified by the police is the same as the one identified by the informant, and may include such information as "the make and model of the vehicle, its license plate numbers, its location and bearing, and similar innocent details . . . ." *Id.* at 731. The information must also "support an inference that the tipster has witnessed an actual traffic violation that compels an immediate stop." *Id.* at 732. The court reasoned that less is required with regard to predictive elements of reliability because of the imminent danger that erratic, and possibly drunk, driving poses and because of the tipster's obvious basis of knowledge, i.e., firsthand contemporaneous observations. *Id.* at 734-737.

Applying this test to the circumstances before it, the court ruled that reasonable articulable suspicion justified the officer's investigative stop:

> An anonymous caller provided an extensive description of a vehicle that, based on his contemporaneous eyewitness

observations, he believed was being operated dangerously, and cited specific examples of moving violations. When Officer Samuelson caught up with the vehicle minutes later while it was stopped at an intersection, he corroborated all its innocent details, confirming that it was the one identified by the tipster. Within seconds after the vehicle resumed motion, Officer Samuelson effected an immediate investigatory stop, rather than allow it to proceed and potentially endanger other vehicles. Under the totality of the circumstances, he had reasonable suspicion to do so, and the stop was valid under the Fourth and Fourteenth Amendments. [*Id.* at 737.]

### B. MICHIGAN LAW: INVESTIGATIVE STOPS OF MOVING VEHICLES BASED ON CITIZENS' TIPS ABOUT ERRATIC DRIVING

While no Michigan case has applied the less rigorous test adopted in *Wheat*, this Court addressed a similar factual situation involving a tip about an automobile accident in *People v Estabrooks*, 175 Mich App 532; 438 NW2d 327 (1989),[2] which predated *Wheat*. The *Estabrooks* Court applied *Tooks*, 403 Mich at 577, to conclude that a citizen informant's tip gave the officer a sufficient suspicion that criminal activity had occurred to justify her investigative stop of the defendant. *Estabrooks*, 175 Mich App at 536-537. In *Estabrooks*, the officer was investigating the scene of an accident when a citizen approached the officer and indicated that defendant's vehicle, a Lincoln Continental, had rearended his motorcycle multiple times. *Id.* at 534. The citizen pointed to the defendant's vehicle, which was stopped in nearby traffic. *Id.* The Court held that it was reasonable for the officer to suspect on the basis of the informant's tip that an accident might have occurred. *Id.* at 537. The Court stated:

---

[2] Published cases issued before November 1, 1990, are not precedentially binding on this Court, although they may be persuasive authority. MCR 7.215(J)(1).

> [T]he fact that the motorcyclist was actually present
> and accusing defendant immediately after the rear-endings
> indicated reliability on the part of the informant. Second,
> the fact that the informant actually pointed out defen-
> dant's car to Officer Summers provided her with precise
> and easily verifiable information, which also indicated that
> the information was reliable. [*Id*. at 536-537.]

The Court rejected the defendant's argument that, because the informant had indicated no criminal activity, the police officer could not have stopped the defendant without some personal observation of the traffic violation. The Court reasoned that, on the basis of the information provided, the officer could have reasonably concluded that a crime had occurred, including leaving the scene of a motor vehicle accident, felonious assault, or operating under the influence of liquor (OUIL). *Id*. at 538. The Court noted, "It is not vital that [the officer] knew exactly what crime was being committed or would be charged when [the officer] decided to stop defendant, only that the circumstances justified the stop." *Id*. at 538-539. Consequently, this Court reversed the circuit court's order that had dismissed the defendant's OUIL conviction. *Id*. at 539.

Although *Estabrooks* applied *Tooks* to conclude that the tip contained sufficient indicia of reliability to justify the stop, the rule in *Tooks* was adopted in a different context and does not adequately take into account the relevant interests that must be balanced in determining whether a vehicle stop based on a citizen's tip about erratic driving is reasonable. In *Tooks*, an in-person anonymous tipster who was on foot informed the police that he had seen the defendant show a gun to two other men. *Tooks*, 403 Mich at 573-574, 583 (KAVANAGH, C.J., dissenting). The Court concluded that the information provided to the police, including a detailed physical description of the defendant and his companions, justified

the stop and subsequent search. *Id.* at 574-575. In reaching this conclusion, the Court recognized the strong interest in police safety, which presented a stronger case justifying a stop and frisk, especially in combination with the tip's detail, than if the tip had involved narcotics or other contraband. *Id.* at 581-582. Accordingly, the interest at stake in *Tooks*, police safety, is different from the interest at issue in the present matter. ˙

The exigency here, and the one that existed in *Estabrooks*, is heightened in comparison to a tip informing a police officer of a concealed weapon or other clandestine contraband. In the latter instance, the police have the opportunity to observe the suspect from afar to possibly confirm or dispel any suspicions or to corroborate the tip and may have the opportunity to initiate a consensual encounter. In other words, the threat of imminent danger is not necessarily as high as in the present case, in which an erratic driver threatened the lives of fellow drivers. See *Wheat*, 278 F3d at 736-737. In contradistinction,

> where an anonymous tip alleges erratic and possibly drunk driving, a responding officer faces a stark choice. . . . [H]e can intercept the vehicle immediately and ascertain whether its driver is operating under the influence of drugs or alcohol. Or he can follow and observe, with three possible outcomes: the suspect drives without incident for several miles; the suspect drifts harmlessly onto the shoulder, providing corroboration of the tip and probable cause for an arrest; or the suspect veers into oncoming traffic, or fails to stop at a light, or otherwise causes a sudden and potentially devastating accident. [*Id.* (citation omitted).]

See also *Christie*, 206 Mich App at 309 (recognizing that erratic driving often indicates an intoxicated driver).

The *Estabrooks* Court did not explicitly recognize the heightened interest at stake. Indeed, there was no need for it to do so because the exact question that is now

before this Court was not at issue in *Estabrooks*. Rather, as noted, the defendant in *Estabrooks* simply argued that the informant had to provide information pertaining to a specific crime, not merely a traffic violation. Thus, while we do not disagree with the outcome in *Estabrooks* or its analysis, we must make clear that less information is required from citizen informants reporting contemporaneous incidents of erratic or potentially dangerous driving to justify an investigative stop than a strict application of *Tooks* would suggest. The *Estabrooks* Court appears to have implicitly recognized this principle, but did not articulate it, in holding that an investigative stop may be justified on the totality of the circumstances even if the informant's tip did not designate a crime.

Certainly, the courts of this state have already recognized, albeit not in cases involving citizen tips, that fewer foundational facts are necessary to justify a stop of a moving vehicle than would be required to search a home or to either stop or search that same vehicle. *People v Whalen*, 390 Mich 672, 682; 213 NW2d 116 (1973); *Faucett*, 442 Mich at 164 n 11 (noting that *Whalen* "set[s] forth the reasonableness standard for all automobile searches, including those based on informants' tips, using the totality of the circumstances test"); *Christie*, 206 Mich App at 308-309. As noted, such investigative stops of automobiles have been deemed reasonable on the basis of less information because the public's interest in safety of the roadways is high compared to the minimally invasive nature of the investigation. Accordingly, we hold, consistently with *Whalen* and *Wheat*, that fewer foundational facts are necessary to justify an investigative stop of a moving vehicle based on a citizen's tip about erratic driving. Specifically, like in *Wheat*, while the quantity of the tip's information must be sufficient to identify the vehicle

and to support an inference of a traffic violation, less is required with regard to a tip's reliability; as to the latter, it will suffice if law enforcement corroborates the tip's innocent details.

### IV. ANALYSIS

In this case, on Saint Patrick's Day in 2008, a citizen was driving north on Dix Road, and she passed Trooper Bommarito, who had just left the parking lot of Malarkey's and was driving south on Dix Road. As she passed, she made eye contact with Bommarito, pointed to defendant's vehicle directly in front of her, and mouthed the words "almost hit me." Bommarito immediately made a U-turn, turned on his siren and emergency lights, and followed defendant's vehicle into the parking lot of Malarkey's. He did not observe defendant drive in an erratic manner.

The woman's action of pointing to the vehicle in front of her was sufficient to accurately identify defendant's vehicle and provided precise and verifiable information to the officer, which also strongly suggests that the information was reliable. The basis of the informant's knowledge was obvious—it can be inferred from her statement, "Almost hit me," and her action of pointing to the vehicle traveling immediately in front of her that defendant's vehicle had recently almost come into contact with the woman's vehicle; her tip was clearly based on firsthand and contemporaneous observations, which further confirms the veracity of the information. Moreover, had Bommarito wished to obtain the informant's personal information he could have, by looking up her license plate number. Accordingly, the fact that the tipster was actually face to face with Bommarito when she relayed the tip, and thus likely knew that she could be subject to police question-

ing, further indicates that she was credible and that the
information she provided was reliable. In addition, her
statement, "Almost hit me," was sufficient to support
an inference that an actual traffic violation had oc-
curred. While it is true that the statement could be
consistent with legal behavior, it was also enough to
create an inference that defendant had been driving
erratically in contravention of MCL 257.626 (reckless
driving, a misdemeanor), MCL 257.626b (careless or
negligent operation of a motor vehicle, a civil infrac-
tion), or MCL 257.625 (operating a motor vehicle while
intoxicated). See also *Christie*, 206 Mich App at 309
(acknowledging that "erratic driving can give rise to a
reasonable suspicion of unlawful intoxication so as to
justify an investigatory stop by a police officer"). "It is
not vital that [the officer] knew exactly what crime was
being committed or would be charged when [the officer]
decided to stop defendant, only that the circumstances
justified the stop." *Estabrooks*, 175 Mich App at 538-
539. The circumstances here, together with the citizen's
statement, certainly justified the stop. Bommarito was
on regular patrol and had just finished a property
inspection at the bar and surrounding area. The pur-
pose of the inspection was to look for potential problems
such as people urinating in public. As previously noted,
it was St. Patrick's Day, the parking lot was full of
patrons, and a large party tent had been set up.

Certainly more facts could have strengthened the
officer's suspicion, but in cases involving tips of erratic
driving of a motor vehicle, fewer facts are necessary to
justify an investigative stop. *Wheat*, F3d at 730-737;
*Whalen*, 390 Mich at 682. "[T]he Fourth Amendment
does not require a policeman to simply shrug his
shoulders and allow a crime to occur or a criminal
escape." *Whalen*, 390 Mich at 682. Had the officer
waited to personally observe defendant engage in dan-

gerous and erratic driving, his suspicion would have
surpassed a reasonable, articulable suspicion and be-
come probable cause to seize defendant and issue an
appropriate citation. "Thus, police would lose the inter-
mediate step of investigatory stops based on reasonable
suspicion." *Wheat*, 278 F3d at 733. In this case, suffi-
cient indicia of reliability supported the citizen's tip,
and Bommarito was justified in conducting the investi-
gative stop. The tip provided sufficient information to
accurately identify the vehicle and create an inference
that a crime or civil infraction had occurred, and the tip
was also sufficiently reliable, being based on the wom-
an's contemporaneous observations. Under the totality
of the circumstances, Bommarito had a reasonable,
articulable suspicion that justified an investigative stop
of defendant's vehicle. The circuit court erred by con-
cluding otherwise.

Reversed and remanded for further proceedings con-
sistent with this opinion. We do not retain jurisdiction.

Zahra, J., concurred.

Gleicher, P.J. (*dissenting*). Today the majority em-
powers private citizens to select certain motorists for
warrantless searches and seizures conducted by police
officers lacking probable cause or any reasonable sus-
picion of criminal conduct. Because the Fourth Amend-
ment prohibits seizures premised on accusations ut-
terly devoid of objective or specific facts, I respectfully
dissent.

Michigan State Police Officer Christopher Bom-
marito testified that he initiated a traffic stop of defen-
dant Shaun Barbarich's truck immediately after a
woman driving a red pickup truck pointed to Barbar-
ich's vehicle and mouthed the words "almost hit me."

Bommarito recalled that he probably read the woman's lips because the windows of her vehicle and his were likely closed. Bommarito admitted that he possessed no other facts or information about the woman or Barbarich when he decided to make the stop:

> *Q.* And so at the time that she mouthed that, did—when did you turn on your overheads?
>
> *A.* I immediately turned my patrol car around and turned my emergency lights and sirens on to initiate a stop on that vehicle.
>
> *Q.* Okay. So, at that point-in-time, when you saw what you thought was her mouthing that he almost hit me, you immediately decided at that point-in-time to stop Mr. Barbarich?
>
> *A.* Correct.

Bommarito acknowledged that he made no attempt to look for the driver of the red pickup truck and could provide no information about her.

The majority concludes, "The woman's action of pointing to the vehicle in front of her was sufficient to accurately identify defendant's vehicle and provided precise and verifiable information to the officer, which also strongly suggests that the information was reliable." *Ante* at 480. According to the majority, "[T]he fact that the tipster was actually face to face with Bommarito when she relayed the tip, and thus likely knew that she could be subject to police questioning, further indicates that she was credible and that the information she provided was reliable." *Ante* at 480-481. In reaching these conclusions, the majority substantially relies on a decision of the United States Court of Appeals for the Eighth Circuit, *United States v Wheat*, 278 F3d 722 (CA 8, 2001). I respectfully disagree that the information available to Bommarito qualified as "precise and verifiable" and that it supplied a rea-

sonable basis for stopping defendant and his vehicle. Furthermore, I believe that *Wheat* may be readily distinguished from the facts presented here.

The protections afforded by the Fourth Amendment "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v Arvizu*, 534 US 266, 273; 122 S Ct 744; 151 L Ed 2d 740 (2002). In *Terry v Ohio*, 392 US 1, 21; 88 S Ct 1868; 20 L Ed 2d 889 (1968), the United States Supreme Court explained that "specific and articulable facts" must exist to justify an intrusion on the constitutionally protected interests of a private citizen. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v Cortez*, 449 US 411, 417; 101 S Ct 690; 66 L Ed 2d 621 (1981). These Supreme Court cases, and innumerable others, instruct that the Fourth Amendment tempers a police officer's power to detain a motorist by measuring the appropriateness of a warrantless seizure against an objective standard that demands particularized evidence of lawbreaking.

To satisfy the Fourth Amendment's objective standard, a police officer must be able to articulate more than "an 'inchoate and unparticularized suspicion or "hunch" of criminal activity.' " *Illinois v Wardlow*, 528 US 119, 123-124; 120 S Ct 673; 145 L Ed 2d 570 (2000), quoting *Terry*, 392 US at 27. Indisputably, an informant's tip may supply reasonable suspicion that a crime has been or is about to be committed. In *Adams v Williams*, 407 US 143; 92 S Ct 1921; 32 L Ed 2d 612 (1972), the United States Supreme Court "extended the *Terry* stop and frisk rationale to situations in which the stop and frisk was prompted by an unverified tip from an informant." *People v Tooks*, 403 Mich 568, 576; 271

NW2d 503 (1978). The informant in *Adams* "was known to [the officer] personally and had provided him with information in the past." *Adams*, 407 US at 146. The Supreme Court also noted that the information given by the informant "was immediately verifiable at the scene" when the police officer saw a weapon in the defendant's waistband. *Id.*

In *Tooks*, 403 Mich at 577, the Michigan Supreme Court considered whether information relayed by a citizen-informant, "as opposed to a known informant," could supply reasonable suspicion for a search. The *Tooks* informant, "an unidentified citizen," approached police officers with a detailed description of a man who had allegedly shown a gun to two other men. *Id.* at 573-574. A short distance from the location of their meeting with the informant, the officers "encountered three males matching the descriptions given by the citizen," conducted a pat-down search of the defendant, and found a concealed pistol. *Id.* at 574. Although the Michigan Supreme Court in *Tooks* repudiated the idea that information supplied by a citizen-informant is inherently unreliable, the Court stopped well short of clothing a citizen-informant's tip with a presumption of credibility. See *id.* at 577-582. Rather, the Court held that "information provided to law enforcement officers by concerned citizens who have personally observed suspicious activities is entitled to a finding of reliability *when the information is sufficiently detailed and is corroborated within a reasonable period of time by the officers' own observations*." *Id.* at 577 (emphasis added). Applying the standards from *Terry* and *Adams*, the Supreme Court set forth "three related factors" that a court must consider "[i]n determining whether the information from the citizen-informant carried enough indicia of reliability to provide the officers with a reasonable suspicion . . . ." *Id.* The three factors are "(1)

the reliability of the particular informant, (2) the nature of the particular information given to the police, and (3) the reasonability of the suspicion in light of the above factors." *Id.*

In finding reliable the information supplied by the informant in *Tooks*, our Supreme Court drew heavily on the second factor, which concerns the specificity of the informant's information:

> This finding is enhanced by and is especially true in light of the second related factor; the detailed information provided regarding the suspects which allowed independent verification by the police of any persons investigated pursuant to that information. The importance of the preciseness of description allowing independent verification is great, as demonstrated by *Draper v United States*, 358 US 307; 79 S Ct 329; 3 L Ed 2d 327 (1959), where an informant's information was found to give police sufficient probable cause to arrest . . . . This kind of detail not only enhances the reliability of the information, but prevents the danger of widespread intrusion by indiscriminate stopping and frisking of members of the public. [*Tooks*, 403 Mich at 578-579.]

The Court later emphasized that it was "impressed with the detail and preciseness of the information given to the officers." *Id.* at 579-580. Moreover, the citizeninformant's information "was verified by the officers very shortly after it was given to them and within a few blocks of the location in which the officers had been given the information." *Id.* at 580.

In *Florida v JL*, 529 US 266; 120 S Ct 1375; 146 L Ed 2d 254 (2000), the United States Supreme Court again considered whether police action based on an anonymous tip by a citizen-informant withstood Fourth Amendment scrutiny. The anonymous tipster in that case reported "that a young black male standing at a particular bus stop and wearing a plaid shirt was

carrying a gun." *Id.* at 268. Shortly after the police arrived, they found three black males at the bus stop, one of whom wore a shirt consistent with the informant's description. "Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct." *Id.* An officer frisked the defendant and found a weapon. The Supreme Court observed that the anonymous call offered "no predictive information and therefore left the police without means to test the informant's knowledge or credibility." *Id.* at 271. The Supreme Court additionally emphasized that "[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the defendant]." *Id.* Ultimately, the Supreme Court rejected the argument that the tip conveyed reasonable suspicion merely because it included "[a]n accurate description of a subject's readily observable location and appearance . . . ." *Id.* at 272. As most relevant here, the Supreme Court instructed that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.*

In assessing whether a police officer possessed reasonable suspicion to stop a vehicle, courts have to take into account both the quantity (content) and quality (reliability) of the available information. *Alabama v White*, 496 US 325, 330; 110 S Ct 2412; 110 L Ed 2d 301 (1990). In this case, the sum of the quantity and quality of Bommarito's knowledge amounted to a decidedly small measure. In my calculus, Bommarito lacked any basis on which to judge the reliability of the passing motorist's allegation. When the woman drove off, Bommarito was "without means to test the informant's knowledge or credibility." *JL*, 529 US at 271. Further-

more, the content of the woman's accusation, "almost
hit me," gave Bommarito no objective, verifiable basis
to suspect Barbarich of violating a law. I will address
separately these distinct concepts.

Although the woman in the oncoming pickup truck
came face to face with Bommarito for a second or two,
Bommarito did not know her or where he could locate
her again. Bommarito conceded that he did not have an
opportunity to observe the woman's license plate be-
cause "my focus was on that vehicle that she pointed
out to me." Therefore, Bommarito had no information
to help him assess the informant's veracity or her
motive in making the accusation against Barbarich, and
he entirely lacked any data validating the reliability of
the information she relayed. The majority asserts that
"the fact that the tipster was actually face to face with
Bommarito when she relayed the tip, and thus likely
knew that she could be subject to police questioning,"
enhances her credibility and the reliability of her tip.
*Ante* at 480-481. But no evidence of record tends to
establish that the woman "likely knew" that Bom-
marito could question her; the majority appears to have
conjured this "fact" from thin air. To the contrary,
Bommarito admitted that he did not know where the
woman traveled after he "went to stop [Barbarich's]
vehicle." Bommarito also conceded that he made no
attempt to look for the woman. In my view, the woman's
departure from the scene entirely undermines the ma-
jority's characterization of her reliability, credibility,
and general good citizenship. The woman's absence also
distinguishes this case from *People v Estabrooks*, 175
Mich App 532, 536-537; 438 NW2d 327 (1989), in which
this Court noted, "[T]he fact that the [informant] was
actually present and accusing defendant immediately
after the rear-endings indicated reliability on the part
of the informant." By deliberately limiting her interac-

tion with Bommarito to merely a passing moment, the informant in this case neither placed her anonymity at risk nor bolstered her reliability.

Furthermore, the unique situation here, a lip-read tip delivered by a rapidly passing motorist, shares no pertinent similarities to those face-to-face tips that are entitled to a finding of reliability. Usually, "[a] face-to-face encounter provides police officers the opportunity to perceive and evaluate personally an informant's mannerisms, expressions, and tone of voice (and, thus, to assess the informant's veracity more readily than could be done from a purely anonymous telephone tip)." *United States v Romain*, 393 F3d 63, 73 (CA 1, 2004). "[A] face-to-face encounter often provides a window into an informant's represented basis of knowledge . . . ." *Id*. In this case, Bommarito had no meaningful opportunity to assess the woman's demeanor or detect any emotion in her voice. The "window into [the woman's] represented basis of knowledge" remained closed. *Id*. Given the profound dearth of information available to Bommarito about the tipster, I score the quality of her information at close to zero.

Moreover, the woman supplied Bommarito with only a bare conclusion: "Almost hit me." This declaration contained no detail concerning the circumstances of the alleged near miss or any facts from which Bommarito could reasonably conclude that Barbarich had likely violated any law. In countless situations drivers "almost hit" each other without either being drunk or driving recklessly. Barbarich may have been momentarily inattentive and failed to keep the proper distance between his truck and the woman's. Alternatively, Barbarich may have pulled out of a parking lot without making a proper observation or changed lanes without first ascertaining whether another vehicle occupied the lane he

entered. Barbarich could have been talking on a cell phone or adjusting the radio, causing him to negligently swerve too close to the woman's truck. An anonymous tip that one driver has "almost hit" another simply fails to substantiate that the offending driver was illegally operating his vehicle.[1] Although the majority suggests that Bommarito inferred that Barbarich was driving illegally, this inference rested on no more than "an inchoate and unparticularized suspicion or hunch" and does not amount to reasonable suspicion for stopping a vehicle. *Wardlow*, 528 US at 124 (citation and quotation marks omitted). If the United States Supreme Court's admonition in *JL*, 529 US at 272, that reasonable suspicion "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person" means anything, it mandates that a police officer possess some articulable basis for suspecting a crime before detaining a citizen. Bommarito articulated no basis here, aside from the tip.

However, even assuming that Bommarito legitimately translated "almost hit me" into "driving recklessly," MCL 257.742(3) circumscribed as follows Bommarito's authority to stop a vehicle:

> A police officer may issue a citation to a person who is a driver of a motor vehicle involved in an accident when, based upon personal investigation, the officer has reasonable cause to believe that the person is responsible for a civil infraction in connection with the accident. *A police*

---

[1] In this regard, the instant case is additionally distinguishable from *Estabrooks*. In that case, the informant advised a police officer that the defendant had rear-ended his motorcycle several times. *Estabrooks*, 175 Mich App at 534. This Court pointed out that although an "officer may not stop a driver for a civil infraction solely on the basis of a witness' complaint," *id.* at 537, citing MCL 257.742(3), the informant's information formed an ample basis for charging the defendant with a misdemeanor, *id.* at 538.

*officer may issue a citation to a person who is a driver of a motor vehicle when, based upon personal investigation by the police officer of a complaint by someone who witnessed the person violating this act or a local ordinance substantially corresponding to this act, which violation is a civil infraction, the officer has reasonable cause to believe that the person is responsible for a civil infraction* and if the prosecuting attorney or attorney for the political subdivision approves in writing the issuance of the citation. [Emphasis added.]

The Michigan Vehicle Code, MCL 257.1 *et seq.*, proscribes reckless driving, which it defines as driving "in willful or wanton disregard for the safety of persons or property . . . ." MCL 257.626(2). Absent any further description of Barbarich's driving, no evidence tended to prove that Barbarich had operated his vehicle in a manner consistent with willful or wanton disregard for the safety of persons or property. The vehicle code also proscribes careless or negligent driving, which includes vehicle operation in a "careless or negligent manner likely to endanger any person or property, but without wantonness or recklessness . . . ." MCL 257.626b. But the statement "almost hit me," without more information, hardly establishes reasonable cause to believe that Barbarich had driven inattentively or with indifference to his surroundings and falls far short of supplying the requisite evidence of a civil infraction.

Even if the woman's declaration could be construed as conveying that Barbarich had driven carelessly or recklessly, Bommarito nevertheless lacked the authority to stop Barbarich's truck. At most, the tip suggested that Barbarich had committed a civil infraction. A civil infraction "is not a crime" under Michigan law, MCL 257.6a, and the probable-cause standard applies to vehicle stops premised on civil infractions. "As a general matter, the decision to stop an automobile is reasonable

where the police have probable cause to believe that a traffic violation has occurred." *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996). The United States Supreme Court explained in *Whren* that in civil infraction situations, the probable-cause standard affords the "quantum of individualized suspicion necessary to ensure that police discretion is sufficiently constrained." *Id.* at 817-818 (citation and quotation marks omitted); see also *United States v Freeman*, 209 F3d 464, 466 (CA 6, 2000). In light of the vague, conclusory nature of the woman's tip, Bommarito unquestionably did not possess probable cause to stop Barbarich for a traffic violation.

In my view, the majority ignores the critical difference between stopping a vehicle on the basis of a tip suggesting a crime in progress and a tip hinting at the commission of a civil traffic offense. Relying largely on *Wheat*, 278 F3d 722, the majority decries the danger attendant on waiting "to personally observe defendant engage in dangerous and erratic driving . . . ." *Ante* at 481-482. But here, unlike in *Wheat*, the evidence available to the arresting officer simply did not support the conclusion that the tipster had witnessed the erratic, dangerous maneuvers of a drunk driver. In *Wheat*, the Eighth Circuit described as follows the facts available to the arresting officer:

> On May 3, 1996, a motorist used his cellular phone to place a 9-1-1 call to the Blairsburg, Iowa Police Department. The caller reported that a tan- and cream-colored Nissan Stanza or "something like that," whose license plate began with the letters W-O-C, was being driven erratically in the northbound lane of Highway 169, eight miles south of Fort Dodge, Iowa. *The caller complained that the Nissan was passing on the wrong side of the road, cutting off other cars, and otherwise being driven as if by a "complete maniac."* The 9-1-1 operator did not ask the caller to identify himself.

> Police dispatchers relayed the caller's tip to patrolling officers. Shortly thereafter, Officer Paul Samuelson observed a tan Nissan Maxima whose license plate began with the letters W-O-C, stopped in the northbound lane of Highway 169 at the intersection of Highway 20. The Nissan made a right turn, and Officer Samuelson stopped it immediately, without having observed any incidents of erratic driving. [*Id.* at 724-725 (emphasis added).]

The details offered by the *Wheat* tipster gave rise to a reasonable inference that the driver of the Nissan was driving while impaired. The Eighth Circuit expressly recognized the importance of the tip's specificity: "In all cases . . . the more extensive the description of the alleged offense, the greater the likelihood that the tip will give rise to reasonable suspicion." *Id.* at 732 n 8. The court emphasized that a tip justifying a stop "must also contain a sufficient quantity of information to support an inference that the tipster has witnessed an actual traffic violation that compels an immediate stop. A law enforcement officer's mere hunch does not amount to reasonable suspicion . . . ; *a fortiori*, neither does a private citizen's." *Id.* at 732. In stark contrast, the tip at issue here gave no information concerning the circumstances of the near miss and no objective data on which to ground a conclusion that Barbarich was drunk. "[I]f failure to follow a perfect vector down the highway or keep[] one's eye on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." *Freeman*, 209 F3d at 466 (citation and quotation marks omitted).

Finally, I respectfully take issue with the majority's rationalization of its decision by means of the precept that "the higher the governmental interest, the more likely a warrantless search or seizure is to be reasonable, especially if the implicated individual interest is

low." *Ante* at 472. In *Delaware v Prouse*, 440 US 648,
654; 99 S Ct 1391; 59 L Ed 2d 660 (1979), the United
States Supreme Court explained that "the permissibil-
ity of a particular law enforcement practice is judged by
balancing its intrusion on the individual's Fourth
Amendment interests against its promotion of legiti-
mate governmental interests." Protection of the public
against the danger of drunk driving certainly qualifies
as a legitimate governmental interest worthy of promo-
tion. But

> [a] central concern in balancing these competing consider-
> ations in a variety of settings has been to assure that an
> individual's reasonable expectation of privacy is not subject
> to arbitrary invasions solely at the unfettered discretion of
> officers in the field. To this end, the Fourth Amendment
> requires that a seizure must be based on specific, objective
> facts indicating that society's legitimate interests require
> the seizure of the particular individual, or that the seizure
> must be carried out pursuant to a plan embodying explicit,
> neutral limitations on the conduct of individual officers.
> [*Brown v Texas*, 443 US 47, 51; 99 S Ct 2637; 61 L Ed 2d
> 357 (1979) (citation omitted).]

In this case, the tip provided Bommarito with an
accusation suggesting that perhaps Barbarich had
driven carelessly. However, the tipster offered no spe-
cific, objective facts reasonably establishing that Bar-
barich was driving while impaired. "The needs of law
enforcement stand in constant tension with the Consti-
tution's protections of the individual against certain
exercises of official power. It is precisely the predictabil-
ity of these pressures that counsels a resolute loyalty to
constitutional safeguards." *Almeida-Sanchez v United
States*, 413 US 266, 273; 93 S Ct 2535; 37 L Ed 2d 596
(1973).

I would hold that an uncorroborated tip from an
unidentifiable source lacking any pertinent detail and

suggesting only an ordinary traffic violation cannot serve as a vehicle for violating the Fourth Amendment, and thus dissent.