*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARCUS KALVIN THORNTON,

Defendant-Appellant.

UNPUBLISHED
October 8, 2019

No. 347561
Oakland Circuit Court
LC No. 2018-166684-AR

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the circuit court's order reversing the district court's decision to suppress evidence discovered during a traffic stop, and dismissing the charges of possession with intent to deliver less than 25 grams of cocaine, MCL 333.7403(2)(a)(*iv*), and possession of marijuana, MCL 333.7403(2)(d). We reverse.

## I. FACTS

During a night shift in April 2018, Oak Park Police Officer Paul Deskiewicz, who was driving a marked police car, had parked in the back of the parking lot of the Embassy Motel on Eight Mile Road in Oak Park, Michigan. He was aware that this particular motel was a common location for illegal drug transactions and in fact had made nearly 100 arrests at that location. While surveilling, Officer Deskiewicz saw a red Oldsmobile Alero pull into the parking lot and stop in the middle of the lot; he continued to watch the car because no one entered or exited it. Officer Deskiewicz then saw someone walk from the motel to the Alero. The person looked in Officer Deskiewicz's direction, walked to the driver's side of the car, and appeared to say something to the driver before walking back to the motel.

---

[1] *People v Thornton*, unpublished order of the Court of Appeals, entered March 20, 2019 (Docket No. 347561).

Officer Deskiewicz began to drive out of the parking lot. As Officer Deskiewicz drove past the Alero, he saw defendant in the driver's seat and a woman in the front passenger seat. Officer Deskiewicz then saw the car park, after which defendant walked to the motel. Officer Deskiewicz drove out of the lot and parked nearby, such that he could still see the motel. Six minutes after defendant entered the motel, he exited. Defendant got back into the Alero, drove out of the parking lot, and turned onto Eight Mile Road. Officer Deskiewicz did not see a license plate on the back of the car when it drove past him. Officer Deskiewicz proceeded to follow the Alero and observed an unreadable temporary paper registration in the rear window. Officer Deskiewicz explained that, at the time, he "couldn't see any legible writing on [it]."

Officer Deskiewicz thereafter pulled defendant's car over to conduct a traffic stop. As he walked up to the Alero, Officer Deskiewicz saw the temporary registration in the back window and, he testified, from that vantage point he was able to see and read the writing on the registration. Officer Deskiewicz then proceeded to the driver's side window and requested defendant's driver's license, registration, and proof of insurance. Defendant responded, "Honestly, officer, I just bought this car."[2] Officer Deskiewicz stated, "That's why I stopped you, I didn't see a plate on the car. You got a paper one there?" Defendant gave Officer Deskiewicz an identification card; defendant did not have a driver's license because it was suspended. Officer Deskiewicz asked defendant if there was anything illegal in the car, to which defendant said, "No sir." Officer Deskiewicz also asked defendant if he could search the car, and defendant replied, "Go ahead." Upon opening the trunk of the Alero, Officer Deskiewicz smelled the strong, fresh odor of marijuana. Officer Deskiewicz peeled back the trunk liner and saw a box of plastic baggies containing a scale and a plastic bag of marijuana. Officer Deskiewicz also found a vest containing a plastic bag of individually packaged "crack rocks" in the pocket.

Defendant moved in the district court to dismiss the charges against him, based on an allegation that the search was illegal. The district court agreed. The court specifically found that "the charges against the defendant arise out of items located in the car after the officer determined upon approach that the plate was legible." The court concluded that

> at the point the officer *saw the plate was properly affixed*[,] the purpose of the stop was completed. Once a sound basis for the traffic stop had been addressed[,] any further extension of the detention in order to conduct on scene investigations into any other crime or for any other reason is a 4th Amendment violation. Therefore the Court finds that *upon determining that the plate was valid*, any further action was unconstitutional and therefore I will suppress the evidence found as a result of the stop. [Emphasis added.]

---

[2] There was a video and audio recording made from equipment in Officer Deskiewicz's police car, which is part of the record. The words spoken during the encounter, as cited in this opinion, were drawn from the recording.

And without any evidence to support the charges, the district court dismissed the case against defendant.

The prosecution appealed the district court's decision to the circuit court. The circuit court, relying on this Court's decision in *People v Simmons*, 316 Mich App 322; 894 NW2d 86 (2016), reversed. This appeal followed.

## II. SUPPRESSION OF EVIDENCE—TRAFFIC STOP

Defendant argues that the circuit court erred in reversing the district court's decision to suppress the seized evidence because Officer Deskiewicz questioned and detained defendant even though he knew that the rationale for the traffic stop was no longer justified when he approached defendant's car. We agree.

While "[t]he trial court's ultimate ruling on a motion to suppress is reviewed de novo," " '[t]his court's review of a lower court's factual findings in a suppression hearing is limited to clear error, and those findings will be affirmed unless we are left with a definite and firm conviction that a mistake was made.' " *Id.* at 325, quoting *People v Davis*, 250 Mich App 357, 362; 649 NW2d 94 (2002).

The Fourth Amendment of the United States Constitution and Article 1, § 11 of the 1963 Michigan Constitution both protect against unreasonable search and seizure, and they are coextensive. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011). "Under the Fourth Amendment, stopping a vehicle and detaining the occupants amounts to a seizure." *Simmons*, 316 Mich App at 326; see also *Whren v United States*, 517 US 806, 809-810; 116 S Ct 1769; 135 L Ed 2d 89 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision."). "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v United States*, ___ US ___, ___; 135 S Ct 1609, 1614; 191 L Ed 2d 492 (2015) Such a routine traffic stop "is a relatively brief encounter and 'is more analogous to a so-called "*Terry* stop" . . . than to a formal arrest.' " *Knowles v Iowa*, 525 US 113, 117; 119 S Ct 484; 142 L Ed 2d 492 (1998), quoting *Berkemer v McCarty*, 468 US 420, 439; 104 S Ct 3138; 82 L Ed 2d 317 (1984), in turn citing *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). A brief investigatory stop is permitted "when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *Navarette v California*, 572 US 393, 396-397; 134 S Ct 1683; 188 L Ed 2d 680 (2014), quoting *United States v Cortez*, 449 US 411, 417-418; 101 S Ct 690; 66 L Ed 2d 621 (1981).

Law enforcement officers may make a valid investigatory stop when they possess "reasonable suspicion that crime is afoot." *People v Custer*, 465 Mich 319, 327; 630 NW2d 870 (2001). Reasonable suspicion takes into account the totality of the circumstances, and depends upon both the content of information possessed by the officer and its degree of reliability. *Navarette*, 572 US at 397. In determining the reasonableness of an officer's suspicion, we view the circumstances "as understood and interpreted by law enforcement officers, not legal scholars." *People v Oliver*, 464 Mich 184, 192; 627 NW2d 297 (2001). Thus, when determining whether a defendant's Fourth Amendment rights have been violated in the context of a *Terry*

stop, we consider the circumstances "in light of commonsense judgments and inferences about human behavior, . . . and should be careful not to apply overly technical reviews of a police officer's assessment of whether criminal activity is afoot." *People v Barbarich*, 291 Mich App 468, 474; 807 NW2d 56 (2011) (citations omitted).

"Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette*, 572 US at 397, quoting *United Stated v Sokolow*, 490 US 1, 7; 109 S Ct 1581; 104 L Ed 2d 1 (1989) (citation and some quotations marks omitted). "The scope of any search or seizure must be limited to that which is necessary to quickly confirm or dispel the officer's suspicion." *Barbarich*, 291 Mich App at 473; see also *United States v Sharpe*, 470 US 675, 686; 105 S Ct 1568; 84 L Ed 2d 605 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.").

Here, Officer Deskiewicz did not see a license plate on the back of defendant's car when it drove past him, and he could not read the temporary registration at the time he pulled defendant over. Under the circumstance, and given the conditions, Officer Deskiewicz had a reasonable suspicion that a violation of a traffic law had occurred, MCL 257.225(2),[3] and he thus was justified in pulling defendant over, or in other words, the stop was justified at its inception. However, the district court found that upon walking up to defendant's vehicle, Officer Deskiewicz was able to see that there was a temporary registration marker and that its numbers were legible.[4] Given Officer Deskiewicz's testimony that he could see the writing "[w]hen [he]

---

[3] MCL 257.225(2) provides, in pertinent part:

> The plate shall be attached at a height of not less than 12 inches from the ground, measured from the bottom of the plate, *in a place and position that is clearly visible*. The plate shall be maintained free from foreign materials that obscure or partially obscure the registration information and *in a clearly legible condition*. [Emphasis added.]

This Court in *Simmons* has held that the display of temporary paper registrations has to meet the positional and legibility requirements for registration "plates" under MCL 257.225(2). *Simmons*, 316 Mich App at 326-327. We are bound to follow *Simmons*. See MCR 7.215(C)(2). However for the reasons discussed, *infra*, in this opinion, we question whether these type of 15-day, temporary paper registrations are indeed "plates" under the Motor Vehicle Code, MCL 257.1 *et seq*. Instead, they appear to be "markers." See MCL 257.226a.

[4] And an exhibit was admitted at the preliminary examination showing that the numbers on the temporary registration marker were written in large numerals with a wide-tipped, black marker. Indeed, the written numbers appear to occupy the entirety of the "boxes" or "fields" dedicated for the numerals. In short, applying MCL 257.225(2), the temporary registration marker was fully compliant with the statute.

walked up to it," this finding, which the circuit court did not review, is not clearly erroneous. Thus, the legal question before us is whether the Constitution permitted Officer Deskiewicz to extend the traffic stop at that point, in light of the requirement that the scope of any search or seizure must be limited to that which is necessary "to quickly confirm or dispel the officer's suspicion." *Barbarich*, 291 Mich App at 473.

In the present case, the circuit court relied solely on the *Simmons* decision, which had some facts similar to those here. In *Simmons*, Officer Robert Cavett pulled over the defendant's car because it did not have a metal license plate attached to the back. *Simmons*, 316 Mich App at 324. When Officer Cavett pulled the car over, he saw that there was a piece of paper on the back window, but he could not read it. *Id*. Officer Cavett looked at the paper again from three to four feet away as he walked up to the car but still could not read the letters or numbers. *Id*. "The writing was very dim, which made the paper illegible." *Id*. Officer Cavett approached the car and asked the defendant (the driver) for his identification, registration, and proof of insurance. *Id*. The officer subsequently arrested the defendant for driving with a suspended license. *Id*. Officer Cavett searched the car with the consent of the passenger, who was the car's owner, and found a firearm. *Id*. Officer Cavett later determined that the paper was a valid temporary registration. *Id*. The defendant moved to suppress the evidence, asserting that he was subjected to an unlawful search and seizure because Officer Cavett lacked a lawful basis for the traffic stop. *Id*. at 325. The trial court granted the defendant's motion to suppress the evidence, finding that Officer Cavett should have verified the validity of the temporary registration. *Id*.

However, this Court reversed the suppression order because it found that Officer Cavett's traffic stop was based on a reasonable suspicion that the defendant had violated traffic laws. *Id*. at 326. Specifically, this Court found that Officer Cavett was justified in pulling over the car for a violation of MCL 257.225(2) because the temporary registration was not in a clearly visible position or in a clearly legible condition. *Id*. The defendant in *Simmons* argued "that the search and seizure became unreasonable when Officer Cavett asked [the] defendant for his license, registration, and insurance, rather than taking five seconds to examine the paper plate affixed to the rear window of the vehicle and determine its validity." *Id*. at 327. However, this Court determined that

> [e]ven had Officer Cavett taken the time to examine the paper plate more closely to determine whether it appeared to be a valid temporary registration plate, *the plate would still have been in violation of MCL 257.225(2)*. Officer Cavett could not read the plate from his car, *nor could he make out the plate from 3 or 4 feet away in the dark*. Thus, the temporary paper license plate was not in a clearly visible position or in a clearly legible condition. [*Id*. (emphasis added).]

This Court therefore held that "Officer Cavett had an articulable and reasonable suspicion that there was a violation of the law, and [the] defendant was detained for a reasonable period in order to permit Officer Cavett to ask reasonable questions concerning the violation of the law and its context." *Id*. at 328.

Contrary to the circuit court's view in this case that *Simmons* was controlling, *Simmons* does not dictate the outcome of this case because its facts are distinguishable from the present facts in one important aspect. It is true that the officers in both *Simmons* and this case could not

read the writing on the temporary registration markers at the times the respective traffic stops were effectuated. But unlike Officer Deskiewicz, the officer in *Simmons* could not read the written numbers on the temporary registration marker while walking up to the vehicle. Thus, the paper registration in *Simmon*s violated MCL 257.225(2) because it was not in a clearly visible position or in a clearly legible condition, thereby justifying continued detention to address the traffic violation. But by contrast, based on Officer Deskiewicz's testimony and the photographs in this case, the numbers on the temporary registration were legible.

By pulling defendant over when he could not see a license plate, Officer Deskiewicz properly followed a mode of investigation reasonably calculated "to quickly confirm or dispel the officer's suspicion," *Barbarich*, 291 Mich App at 473, that defendant's car was in violation of traffic laws. That investigation quickly *dispelled* Officer Deskiewicz's suspicions, demonstrating that the vehicle's temporary registration was properly displayed and legible. Thus, at issue in the present case is whether Officer Deskiewicz's subsequent questioning of defendant and asking for his driver's license, registration, and insurance went beyond the allowable scope of the seizure. "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.' Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 135 S Ct at 1614 (citations omitted). That is so even when, as in *Rodriguez* and *Simmons*, and unlike in the present case, there *was* a violation of the traffic laws. *A fortiori*, if there was no violation of traffic laws, the permissible "purpose" of the stop necessarily ended at the moment when Officer Deskiewicz determined that no violation of the traffic laws had occurred. The prosecutor cites to *Rodriguez*'s observation:

> Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. [*Id.* at 1615 (citations omitted).]

The underlying premise of that point, however, is that an officer is justified in conducting such additional investigation when there is in fact a violation of traffic laws, or at least a reasonable suspicion of such a violation, and the officer is making a determination of how to proceed; thus, constitutionally, continuation of the seizure was unjustified once the officer determined that there was no reasonable suspicion of any such violation. An officer who investigates and determines that there was no traffic violation, and thus no continued justification for detaining defendant, is prohibited from nevertheless demanding a driver's license and registration. The prosecution argues that "[l]ess than 30 seconds after Officer Deskiewicz asked defendant for his license, defendant admitted that his driver's license was suspended," and thus the extension of the stop was not in violation of the Constitution. But a "temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren*, 517 US at 809-810. The permissible duration of the initial stop, as with any *Terry* stop, is measured not by how much time elapses on the clock but whether the officer diligently took steps to confirm or dispel his suspicions. Officer Deskiewicz did so and dispelled his suspicions that defendant's car lacked a legible temporary registration marker.

-6-

As the seizure's permissible scope had been reached and thus the seizure was, as a matter of law, at an end once the officer determined that the car had a facially valid temporary registration, any further detention of defendant constituted a new seizure, and even a 30-second extension of the initial stop constituted a violation of defendant's rights. Although the prosecution also argues that the officer nevertheless was permitted to investigate defendant's driver's license and registration, initiating a new seizure solely for the purpose of examining such documents is functionally no different than the practice found unconstitutional in *Delaware v Prouse*, 440 US 648; 99 S Ct 1391; 59 L Ed 2d 660 (1979)—i.e., randomly stopping vehicles not suspected of any traffic violation or other violation of law simply for the purpose of checking drivers' licenses and registrations. Thus, while the initial stop here was justified at its inception, continuing to detain defendant after the officer had determined that there was no violation of the traffic laws by asking for his driver's license without telling him he was free to go constituted an impermissible extension of the stop beyond its legitimate scope;[5] the evidence found as a result therefore was inadmissible. See *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

On appeal, the prosecution asserts that the continued seizure of defendant, after recognizing that the temporary registration was legible, nevertheless was justified because the display of the temporary paper registration was in violation of MCL 257.686(2), which requires "a tail lamp or a separate lamp" to be placed on a vehicle such that it illuminates "the rear registration *plate*," rendering the plate "clearly legible from a distance of 50 feet to the rear." (Emphasis added.) Further, the lamp "shall be wired so as to be lighted whenever the head lamps or auxiliary driving lamps are lighted." MCL 257.686(2). However, in the lower courts, neither the prosecution nor the testifying officer mentioned this potential violation as a justification for the seizure. As such, we decline to consider it. See *Johnson v Johnson*, ___

---

[5] Officer Deskiewicz was duty bound to inform defendant that the traffic stop was completed and that defendant was free to go. Once the seizure began, it would continue "if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v Mendenhall*, 446 US 544, 554; 100 S Ct 1870; 64 L Ed 2d 497 (1980); see also *California v Hodari D*, 499 US 621, 628; 111 S Ct 1547; 113 L Ed 2d 690 (1991) ("*Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person."). Having been pulled over by a police car, a reasonable person in defendant's position would not have felt free to leave until told by the officer that he was free to go; the demand for defendant's driver's license thus was unlawful because it was based on what had become an unlawful stop. Of course, once an officer in this position clearly explains that the driver is free to leave, the Constitution would not prohibit the officer from further asking other questions, including asking if the driver would consent to provide his driver's license or even a search of the car. See *Florida v Bostick*, 501 US 429, 437; 111 S Ct 2382; 115 L Ed 2d 389 (1991) ("[N]o seizure occurs when police ask questions of an individual . . . so long as the officers do not convey a message that compliance with their requests is required"). Needless to say, that course was not followed here.

Mich App ___, ___; ___ NW2d ___ (2019) (Docket Nos. 345803; 345955), slip op at 8 ("Arguments raised for the first time on appeal are unpreserved and 'not ordinarily subject to review.' ") (citation omitted).

Moreover, as MCL 257.686(2) only applies to *plates*, we would be inclined to not interpret this equipment statute as pertaining to the illumination of temporary paper registration *markers*. The prosecution urges us to follow this Court's opinion in *People v Stanley*, unpublished per curiam opinion of the Court of Appeals, issued March 24, 2015 (Docket No. 319229), in which this Court held that the illumination requirements of MCL 257.686(2) did apply to temporary paper "plates." However, being unpublished, *Stanley* is not binding. MCR 7.215(C)(1). Furthermore, we do not believe *Stanley*'s analysis is persuasive. The *Stanley* Court noted that "[a]lthough the word 'plate' is undefined in the [Motor Vehicle Code], the code does refer to the paper registrations given for temporary purposes as 'plates' despite their paper composition." *Stanley*, unpub op at 3, citing MCL 257.226a and MCL 257.625*l*. We disagree with this characterization. MCL 257.226a says that "[t]emporary registration plates *or markers* may be issued to licensed dealers in vehicles," which are not to be valid for more than 15 days. (Emphasis added.) Thus, giving effect to every word in the statute, *People v Pickney*, 501 Mich 259, 282; 912 NW2d 535 (2018), it is clear that MCL 257.226a provided the Secretary of State with *two* different methods in which to arrange for dealer-issued temporary registrations: via plate or via marker. As the *Stanley* Court observed, the code does not define what a plate is, but consulting a dictionary shows that it is the usual metal-type plate people envision when they hear the term "license plate." See *Webster's Collegiate Dictionary* (11th ed) (pertinently defining "plate" as a "license plate," which in turn is defined as "a plate or tag (as of metal) attesting that a license has been secured and [usually] bearing a registration number"). A "marker" on the other hand simply is defined as "something that serves to identify . . . ." *Id*. Thus, a marker in this context merely represents any manner of displaying a registration without utilizing a plate— which necessarily includes the use of paper adhered to the rear window. We also note that the temporary registration referenced in MCL 257.226b is different than the temporary registrations referenced in MCL 257.226a. The registrations issued under MCL 257.226b are valid for either 30 or 60 days, while the dealer-issued temporary registration "markers" issued under MCL 257.226a are valid for only 15 days.

We also are not persuaded by the prosecution's suggestion that a vehicle operator simply could affix such paper registration markers to the rear bumper area of the vehicle, where the dedicated lamp exists; the paper's delicate and temporary nature would not last very long following exposure to Michigan's natural elements (e.g., wind, rain, snow, ice) or human-created elements (e.g., jarring from potholes). Moreover, the Secretary of State expressly requires that such paper registrations be displayed *in the rear window*. See Secretary of State, *Buying a Vehicle From a Dealer* <https://www.michigan.gov/sos/0,4670,7-127-1585_1611_50409-25464--,00.html> (accessed September 9, 2019) (stating that the dealer should give you "a new license plate and registration, or, if you're purchasing a new plate, a 15-day temporary registration *affixed to the rear window*") (emphasis added). To be clear, we recognize that the Legislature undoubtedly has the power and ability to impose lighting requirements on vehicles for interior paper registration markers, but given the language used in the code and MCL 257.686(2), we would decline to conclude that the Legislature has exercised its authority in that manner.

Regardless, it would be helpful to the judiciary and the public at large for the Legislature to clarify in the code what the display requirements are for temporary registration markers.

## III. CONCLUSION

For the reasons stated, the circuit court erred by reversing the district court's decision suppressing the evidence and dismissing the charges. We therefore reverse the order of the circuit court, thereby reinstating the district court's orders suppressing the evidence and dismissing the charges.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel